Cathy Jean GOOLEY, Plaintiff-Appellant,

v.

H. C. MOSS, M. D., Wayne A. Stanton, John U. Keating, M. D., Glenn H. Speckman, M. D., and Voluntary Sterilization Association of Indiana, Inc., Defendants-Appellees.

No. 1–579A127.

Court of Appeals of Indiana, First District.

Dec. 31, 1979.

Kenneth C. Kern, Hart E. Meyer, Kenneth C. Kern & Associates, Indianapolis, for plaintiff-appellant.

Richard L. Fairchild, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, for defendants-appellees H. C. Moss, M.D. and Glenn H. Speckman, M.D.

Franklin I. Miroff, David L. Dunlap, Ancel, Friedlander, Miroff & Ancel, P. C., Indianapolis, for defendant-appellee Wayne A. Stanton.

Theodore L. Sendak, Atty. Gen. of Indiana, Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for defendant-appellee John U. Keating, M.D.

Thomas A. Withrow, Henderson, Daily & Foxworthy, Indianapolis, for defendant-appellee Voluntary Sterilization Association of Indiana, Inc.

LOWDERMILK, Presiding Judge.

### STATEMENT OF THE CASE

Plaintiff-appellant Cathy Jean Gooley filed this action against defendants-appellees H. C. Moss, M.D., Glenn H. Speckman, M.D., John U. Keating, M.D., Wayne A. Stanton, and the Voluntary Sterilization Association of Indiana, Inc. to recover for her alleged wrongful subjection to surgery which left her incapable of bearing children. The Boone Circuit Court granted the motions to dismiss and motions for summary judgment filed by the various defendants. We affirm in part and reverse in part.

## FACTS

Cathy Gooley, who was born on May 1, 1958, was made a ward of the Marion County Department of Public Welfare by order of the Marion County Juvenile Court dated August 6, 1965, after that court found that she was a neglected child. Cathy stayed in several different foster homes during the next few years.

On February 22, 1969, Cathy was admitted to Central State Hospital, where Dr. Keating served as superintendent. A form entitled Consultation and Request for Sterilization was signed May 11, 1970, by Dr. Moss, who expressed his opinion that Cathy Gooley "needs sterilization because of her mental retardation. Intelligence level and the patient's ability to care for herself are such that hysterectomy would be the procedure of choice." Dr. Speckman signed the form as consulting physician on June 15, 1970, and placed a check mark beside a paragraph which read, "I have reviewed the indications for sterilization of this patient and am satisfied they are as stated; furthermore, I am of the opinion that sterilization is justified and consistent with the indications as set forth in the bylaws of this hospital." Both Wayne A. Stanton, as Director of the Marion County Department of Public Welfare, and Cathy's natural father signed a form entitled Release and Permission for Sterilization. On June 18, 1970, Dr. Moss performed the hysterectomy.

Cathy Gooley filed this action on April 3, 1978, and asked for two million dollars in compensatory damages "on account of her physical and mental pain resulting from the destruction of her reproductive system, on account of battery during the surgery and on account of her false imprisonment." She also asked for one million dollars in punitive damages "because of the total disregard of the law by defendants in destroying her reproductive system, the unpermitted surgery, and the false imprisonment in Central State Hospital." The Boone Circuit Court granted the motion to dismiss filed by Dr. Moss and Dr. Speckman and granted summary judgment in favor of Wayne Stanton, Dr. Keating, and the Voluntary Sterilization Association of Indiana, Inc.

## ISSUES

1. Does IC 1971, 34–1–2–5 (Burns Code Ed.) extend the time in which to file a claim which is otherwise governed by IC 1971, 16–9.5–3–1 and 2 (Burns Code Ed., Supp. 1979)?

2. Is Cathy Gooley's action against the superintendent of Central State Hospital barred by IC 16–9.5–3–1 and 2?

3. Is Cathy Gooley's action against Dr. Moss and Dr. Speckman barred by IC 16–9.-5–3–1 and 2?

4. Is Wayne Stanton personally liable for those acts and omissions with which Cathy Gooley charges him?

5. Did the trial court err in granting summary judgment in favor of the Voluntary Sterilization Association of Indiana, Inc.?

## DISCUSSION AND DECISION

The issues presented by this appeal require consideration of certain sections of the Medical Malpractice Act.

IC 1971, 16–9.5–1–1 (Burns Code Ed., Supp.1979) offers this definition of "health care provider":

"(a) 'Health care provider' means:

(1) A person, partnership, corporation, professional corporation, facility or institution licensed or legally authorized by this state to provide health care or professional services as a physician, psychiatric hospital, hospital, dentist, registered or licensed practical nurse, optometrist, podiatrist, chiropractor, physical therapist or psychologist, or an officer, employee or agent thereof acting in the course and scope of his employment; * * * * "

IC 16–9.5–1–1 provides these additional definitions which are relevant to the case at bar:

"(b) 'Physician' means a person with an unlimited license to practice medicine in this state under IC 25–22.5[25–22.5–1–1.1 —25–22.5–9–14].

(c) 'Patient' means a natural person who receives or should have received

health care from a licensed health care provider, under a contract, express or implied.

\* \* \* \* \* \*

(g) 'Tort' means any legal wrong, breach of duty, or negligent or unlawful act or omission proximately causing injury or damage to another.

(h) 'Malpractice' means any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient.

(i) 'Health care' means any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.

\* \* \* \* \* \*

(n) 'Psychiatric hospital' means a private institution licensed under IC 16–13–2–3, and public institutions under the administrative control of the commissioner of the department of mental health as designated by IC 16–13–1–9."

*Issue One*

■ Cathy Gooley contends that IC 34–1–2–5 extends the period of time in which she can file a claim which would otherwise be governed by IC 16–9.5–3–1 and 2.

IC 34–1–2–5 reads as follows:

"Any person, being under legal disabilities when the cause of action accrues, may bring his action within two [2] years after the disability is removed."

IC 16–9.5–3–1 provides:

"No claim, whether in contract or tort, may be brought against a health care provider based upon professional services or health care rendered or which should have been rendered unless filed within two [2] years from the date of the alleged

act, omission or neglect except that a minor under the full age of six [6] years shall have until his eighth birthday in which to file. This section applies to all persons regardless of minority or other legal disability."

IC 16–9.5–3–2 further explains:

"Notwithstanding the provisions of IC 1971, 16–9.5–1–7,[1] any claim by a minor or other person under legal disability against a health care provider stemming from professional services or health care rendered, whether in contract or tort, based on an alleged act, omission or neglect which occurred prior to the effective date [July 1, 1975] of this article [16–9.5–1–1—16–9.5–9–10], shall be brought only within the longer of:

(a) Two [2] years of the effective date of this article; or

(b) The period described in section 1 [16–9.5–3–1] of this chapter." (Our footnote)

Cathy Gooley relies upon *City of Fort Wayne v. Cameron*, (1977) Ind., 370 N.E.2d 338, in arguing that IC 34–1–2–5 prevents her lawsuit from being barred by IC 16–9.5–3–1 and 2. In *Cameron* IC 34–1–2–5 was considered in conjunction with a statute which at that time required that a city be given notice of a claim within sixty days of the occurrence. That statute was not a statute of limitations; it was a procedural precedent to the bringing of an action. In the case at bar, however, IC 16–9.5–3–1 and 2 are statutes of limitation and they specifically address the situation of persons who are minors or who are under some other legal disability.[2] We hold that Cathy Gooley cannot rely upon IC 34–1–2–5 for an extension of time beyond that date determined by applying IC 16–9.5–3–1 in conjunction with IC 16–9.5–3–2.

Cathy Gooley was born on May 1, 1958. She entered Central State Hospital on Feb-

---

1. IC 1971, 16–9.5–1–7 (Burns Code Ed., Supp. 1979): "The provisions of this article [16–9.5–1–1—16–9.5–9–10] do not apply to any act of malpractice which occurred before July 1, 1975."

2. The specificity of IC 16–9.5–3–1 and 2 also distinguishes this case from that of *Chaffin v. Nicosia*, (1974) 261 Ind. 698, 310 N.E.2d 867, which Cathy Gooley cites.

ruary 22, 1969. Dr. Keating served as superintendent of Central State Hospital from April 1, 1968, through April 30, 1974. The surgery was performed on Cathy on June 18, 1970. She filed this lawsuit on April 3, 1978.

All acts and omissions for which Cathy Gooley seeks recovery occurred at a time when she was more than six years old and at a time prior to July 1, 1975. Accordingly, Cathy Gooley was required to file her lawsuit within two years of July 1, 1975, in order to recover from any health care provider for acts or omissions encompassed by the Medical Malpractice Act. She failed to do so.

*Issue Two*

According to Cathy Gooley, the trial court erred in granting summary judgment in favor of Dr. Keating because a genuine issue of material fact exists as to whether Keating's alleged actions "in keeping her in Central State Hospital without proper authority and in permitting her to be sterilized in disregard of the statute governing sterilization of inmates of that Hospital" are encompassed by the provisions of the Medical Malpractice Act.

Central State Hospital is a public institution under the administrative control of the commissioner of the department of mental health. IC 1971, 16–13–1–9 (Burns Code Ed.). Keating, as superintendent, served as the chief medical officer and general director of Central State Hospital. IC 1971, 16–14–5–8 (Burns Code Ed.).[3] In particular, IC 1971, 16–14–9–4 (Burns Code Ed.) and IC 1971, 16–14–9–20 (Burns Code Ed.)[4] demonstrate the responsibility of the superintendent for admission of patients. IC 1971, 16–13–13–1 (Burns Code Ed.), *et seq.*,[5] impose upon the superintendent specific duties with regard to sterilization of patients.

We hold that Keating is a health care provider, as that term is defined in IC 16–9.5–1–1(a)(1). Gooley charges Keating with a failure to follow proper admission procedures, false imprisonment as a result thereof, and failure to follow proper sterilization procedures. These alleged wrongs are based upon health care or professional services which were rendered or should have been rendered by Keating to Cathy Gooley as a patient confined at Central State Hospital. Because she did not commence her action against Keating until April 3, 1978, her action is barred.

The trial court correctly granted Dr. Keating's motion for summary judgment.

*Issue Three*

Cathy Gooley argues that the trial court erred in granting the motion to dismiss filed by Moss and Speckman. She contends that she was not a "patient" of Dr. Moss or Dr. Speckman as that term is defined at IC 16–9.5–1–1(c), because Wayne A. Stanton could not consent to the performance of the surgery and therefore no contractual relationship existed.

Stanton cites IC 1971, 16–8–3–1 (Burns Code Ed.), which provides:

"Consent to medical or surgical treatment of a person (herein called the 'patient') incompetent to give such consent by reason of minority, insanity, mental illness, imbecility, idiocy, senility, habitual drunkenness or drug addiction may be given by the following persons, and such consent shall, on and after July 6, 1961, be binding on the patient, his or her heirs, administrators, executors and personal representatives:

(a) If the patient is an unmarried unemancipated minor, by one [1] parent having custody of such minor, Provided, That if there is no such parent, by the legal guardian of the minor, and further Provided That *if the patient is a neglected child, by the agency of which the child*

---

**3.** This section was repealed by Acts 1978, P.L. 6, § 36.

**4.** These sections were repealed by Acts 1975, P.L. 154, § 5.

**5.** These sections were repealed by Acts 1974, P.L. 60, § 1.

*has been made a ward of the juvenile court; * * * "* (Our emphasis)

IC 1971, 12–1–4–1 (Burns Code Ed.) reads as follows:

"Whenever, by any of the provisions of this act [12–1–1–1—12–1–12–17], or of any other act, any right, power or duty is imposed or conferred on the state department of public welfare or the county department of public welfare, the right, power or duty so imposed or conferred shall be possessed and exercised by the administrator and directors of divisions, or the county director, as the case may be, unless otherwise provided in this act; * * * "

■ Cathy Gooley became a ward of the Marion County Department of Public Welfare on August 6, 1965, and remained its ward until 1976. Wayne A. Stanton, as director of the Marion County Department of Public Welfare, had authority to consent to Cathy Gooley's medical or surgical treatment.

Cathy Gooley argues, however, that IC 16–8–3–1 contemplates only medical or surgical services for the purpose of diagnosing some ailment or effecting a cure of some injury or disease. Her assertion is supported by the case of *A. L. v. G. R. H.*, (1975) 163 Ind.App. 636, 325 N.E.2d 501. A. L. filed a complaint for declaratory judgment seeking a determination of her right under the common law attributes of the parent-child relationship to have her minor son sterilized. Judge Garrard wrote, at 325 N.E.2d 502, on behalf of this court:

"In considering the facts at hand, it should be first noted that we are not dealing with a legislative enactment permitting sterilizations without consent where certain conditions exist.

Secondly, the facts do not bring the case within the framework of those decisions holding either that the parents may consent on behalf of the child to medical services necessary for the child, or where the state may intervene over the parents' wishes to rescue the child from parental neglect or to save its life.

Permanent sterilization as here proposed is a different matter. Its desirability emanates not from any life saving necessities. Rather, its sole purpose is to prevent the capability of fathering children.

We believe the common law does not invest parents with such power over their children event though they sincerely believe the child's adulthood would benefit therefrom." (Footnotes omitted)

In *Ahnert v. Wildman*, (1978) Ind.App., 376 N.E.2d 1182, 1185–86, Judge Buchanan made these comments concerning the physician-patient relationship:

"Those who take the Hippocratic oath undertake to practice the healing art on a consensual basis with their patients, usually in expectation of payment for services rendered. The physician-patient relationship has been held to be a consensual one, wherein the patient knowingly seeks the assistance of a physician and the physician knowingly accepts him as a patient. *Findlay v. Board of Supervisors of Mohave County*, (1951) 72 Ariz. 58, 230 P.2d 526, 24 A.L.R.2d 841. The relationship may result from an express or implied contract, either general or special, and the rights and the liabilities of the parties are governed by the general law of contract, * * * "

■ Dr. Moss entered into a contract with the Marion County Department of Public Welfare,[6] by the terms of which he agreed to perform a hysterectomy on Cathy Gooley.[7] This contract was for an act which qualifies as "health care" as that

---

6. Cathy Gooley argues that Dr. Speckman is liable as an accomplice of Dr. Moss.

7. According to 6 I.L.E. *Contracts* § 81, "[a] contract may be considered illegal either because its performance, on one side or the other, would be criminal or tortious, or because, even though performance might be lawful, the making of the bargain itself is prohibited." De-

pending upon the particular facts, an illegal contract may be either void or voidable. We need not pursue this analysis further, however, because only the parties to the contract may challenge its legality. *Woodruff v. Commissioners of Noble County*, (1894) 10 Ind.App. 179, 37 N.E. 732.

term is defined in IC 16–9.5–1–1(i). Because the Department of Public Welfare did not have the power to authorize the sterilization *(A. L. v. G. R. H., supra),* Dr. Moss may not be permitted to rely upon that consent as a defense to charges of assault and battery. Nevertheless, a contract did exist. Cathy Gooley was a "patient" as that term is defined in IC 16–9.5–1–1(c): " * * * a natural person who receives or should have received health care from a licensed health care provider, under a contract, express or implied."

The trial court correctly granted the motion to dismiss which was filed by Dr. Moss and Dr. Speckman.

*Issue Four*

Cathy Gooley argues that the trial court erred in granting Stanton's motion for summary judgment.

The Marion County Department of Public Welfare is charged with the care and supervision of neglected and dependent children domiciled in Marion County. IC 1971, 12–1–3–4 (Burns Code Ed.); IC 1971, 12–3–3–1 (Burns Code Ed.).[8] Any right, power, or duty conferred or imposed upon the county department of public welfare is exercisable by the county director. IC 1971, 12–1–4–1 (Burns Code Ed.).

Cathy Gooley was made a ward of the Marion County Department of Public Welfare when the Marion County Juvenile Court determined that she was a neglected child. Thereafter, Wayne A. Stanton, as director of the Marion County Department of Public Welfare, allegedly committed two errors: he caused Cathy Gooley to be committed at Central State Hospital without benefit of court order; he signed a consent form which resulted in the performance of a hysterectomy on Cathy Gooley.

IC 1971, 12–1–4–3 (Burns Code Ed.) provides:

"Neither the members of the state or county board, the administrator nor the several officers and employees of the state or county departments shall be personally liable, except to the state of Indiana or the county for any official act done or omitted in connection with the performance of their respective duties under the provisions of this act [12–1–1–1 —12–1–12–17]."

We must hold that Wayne Stanton is not *personally* liable for any error of the acts and omissions with which Cathy Gooley charges him. Such acts and omissions were in connection with the performance of his duties as director of the Marion County Department of Public Welfare.

The trial court correctly granted Wayne Stanton's motion for summary judgment.

*Issue Five*

Cathy Gooley contends that the trial court erred in granting summary judgment in favor of the Voluntary Sterilization Association of Indiana, Inc. (the Association).

In her complaint Cathy Gooley alleged:

"The Voluntary Sterilization Association of Indiana, Inc. supported the admission of the plaintiff to Community Hospital of Indianapolis, Inc. for sterilization."

After raising the statute of limitation as an affirmative defense in its answer, the Association filed its motion for summary judgment arguing that IC 16–9.5–3–1 barred Cathy Gooley's claim against the Association.

In moving for summary judgment, the proponent bears the burden of establishing that no genuine issue of material fact exists. Any doubt as to the existence of a genuine issue of material fact must be resolved against the proponent of the motion for summary judgment. *Podgorny v. Great Central Insurance Co.,* (1974) 160 Ind. App. 244, 311 N.E.2d 640.

IC 16–9.5–3–1 and 2 are applicable only to health care providers. In its brief the Association has cited nothing whatsoever in the record which would enable this court or the trial court to determine whether the Association satisfies the statutory definition of "health care provider." This obviously constitutes a genuine issue of material fact if the Association relies solely upon the limitation imposed by IC 16–9.5–3–1 and 2.

**8.** IC 12 3 ·3 ·1 was repealed by Acts 1978, P.L. 136, § 57.

The Association argues on appeal, however, that Cathy Gooley failed to state a claim upon which relief could be granted against the Association. Cathy Gooley responds that the principal actor is not the only person who can be held liable for commission of a battery. She contends that the Association is potentially liable as one who aided, abetted, or encouraged commission of a battery.[9]

■ The Association offers several arguments in which it assumes that the Association's liability, if any, would be vicarious liability. If the Association did aid, abet, and encourage the commission of a wrongdoing, however, it is equally liable along with the principal actor and no theory of vicarious liability is involved. *Little v. Tingle,* (1866) 26 Ind. 168.

Cathy Gooley alleged that Dr. Moss performed unlawful surgery upon her which constituted a battery, and that the Association had "supported" her admission to the hospital for the purpose of that surgery.

A response to a motion for a more specific statement of the claim might well have promoted an early disposition of the claim. As the matter rests now, however, we cannot say with certainty that no basis exists for recovery by Cathy Gooley against the Association. Any doubts must be resolved against the Association. *Podgorny v. Great Central Insurance Co., supra.*

The judgment as to the Voluntary Sterilization Association of Indiana, Inc. is reversed, and the cause is remanded to the trial court for further proceedings. The judgment as to all other defendants is affirmed.

ROBERTSON and NEAL, JJ., concur.

---

9. See *Little v. Tingle,* (1866) 26 Ind. 168.