**MIDTOWN COMMUNITY MENTAL HEALTH CENTER; Health and Hospital Corporation of Marion County, Indiana; Wishard Memorial Hospital; Alan D. Schmetzer, M.D., Michael J. Trent, PSW; Eugene S. Turrell, M.D.; and The Trustees of Indiana University, Defendants–Appellants,**

v.

**The ESTATE OF Thomas E. GAHL, by its Administratrix, Nancy L. GAHL; Nancy L. Gahl; Christopher T. Gahl and Nicholas K. Gahl, Minors, by their Parent, Nancy L. Gahl, Plaintiffs–Appellees,**

**Indiana Department of Insurance, Non–Appealing Party Plaintiff.**

No. 49A02–8903–CV–83.

Court of Appeals of Indiana, First District.

July 18, 1989.

David S. Allen, Karl M. Koons, III, Locke Reynolds Boyd & Weisell, Indianapolis, for defendants-appellants.

James P. Seidensticker, Jr., V. Samuel Laurin, III, Bose McKinney & Evans, Indianapolis, for plaintiffs-appellees.

RATLIFF, Chief Judge.

STATEMENT OF THE CASE

Defendant appeals denial of motion to dismiss based upon Indiana's Medical Malpractice Act.[1] We affirm.

1. Indiana Code section 16–9.5–9–1 *et seq.*

## FACTS

On September 22, 1986, United States Probation Officer Thomas Gahl was shot and killed by Michael Wayne Jackson. Jackson was a former patient of the Midtown Community Mental Health Center (Midtown). Midtown was operated or managed by Health and Hospital Corporation of Marion County (Hospital Corporation) and Wishard Memorial Hospital (Wishard). Alan Schmetzer, M.D. and Eugene Turrell, M.D. were agents or employees of Midtown and the Trustees of Indiana University (Trustees). Michael Trent, PSW, was an employee of Midtown. On September 16, 1988, Nancy Gahl, as wife of Thomas Gahl, as administratrix of the Estate of Thomas Gahl, and on behalf of her children (collectively, the Estate) filed a wrongful death action against Midtown, Hospital Corporation, Wishard, Trustees, Schmetzer, Turrell, and Trent (collectively, defendants). The complaint alleged that the defendants were negligent in their care of Jackson and that the defendants' failure to warn Gahl of Jackson's dangerous propensities proximately caused Gahl's death.

On November 7, 1988, the defendants filed a motion to dismiss pursuant to Indiana Rules of Procedure, Trial Rule 12(B). The defendants argued that the suit had been prematurely filed since no opinion had been issued by a medical review panel as was required by the Indiana Medical Malpractice Act (Malpractice Act). The trial court denied the motion to dismiss and upon the defendants' request, certified its order for interlocutory appeal pursuant to Indiana Rules of Procedure, Appellate Rule 4(B)(6).

## ISSUE

Is the Estate's claim subject to the provisions of Indiana's Medical Malpractice Act?

2. At the time this action was commenced, the Estate had filed a proposed complaint with the

## DISCUSSION AND DECISION

The defendants argue that the Estate's claim is based upon alleged medical malpractice and that, therefore, the Estate was required to comply with the terms of the Malpractice Act. Ind.Code § 16–9.5–9–2 provides: "No action against a health care provider may be commenced in any court of this state before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this chapter and an opinion is rendered by the panel." It is undisputed that each of the defendants was a qualified health care provider under the Malpractice Act at the time relevant to this action. At the time this action was commenced, a medical review panel had not yet been formed to review the Estate's claim, and no panel opinion had been rendered.[2] Thus, if the Estate's claim falls within the purview of the Malpractice Act, it must be dismissed.

Our supreme court examined the purpose of the Malpractice Act in *Johnson v. St. Vincent Hospital, Inc.* (1980), 273 Ind. 374, 404 N.E.2d 585, and concluded that the act was constitutional. The court explained that the Malpractice Act was a legislative response to escalating problems in the malpractice insurance industry. Physicians practicing high-risk specialties were "hard pressed or totally unable to purchase insurance coverage." *Johnson*, 273 Ind. at 379, 404 N.E.2d at 589. The Malpractice Act created "voluntary state-sponsored liability insurance for doctors and other health care providers, created a patient compensation fund, took measures to prevent injuries to patients through the negligence of health care providers, and subjected negligence claims against health care providers to special controls limiting patient remedies." *Id.* at 380, 404 N.E.2d at 590. In sum, the act was designed to preserve health care services and thereby protect the public health and wellbeing of the community.

The Malpractice Act does not necessarily apply to all cases where a health care provider is a party. In *Winona Memorial*

Commissioner of the Indiana Department of Insurance. *See* Ind.Code § 16–9.5–9–1.

*Foundation v. Lomax* (1984), Ind.App., 465 N.E.2d 731, we concluded that the Malpractice Act did not apply to a plaintiff's claim against a hospital. Lomax fell on a loose floor board on her way from a dressing room to the hospital's physical therapy pool; Lomax subsequently sued the hospital. The hospital argued that Lomax's negligence claim was based upon a malpractice theory, that the claim was subject to the Malpractice Act, and that Lomax had not complied with the act's provisions. Judge Miller examined the legislative purpose behind the Malpractice Act and reasoned:

"Thus, the conditions that were the impetus for the legislature's enactment of the Medical Malpractice Act had nothing to do with the sort of liability any health care provider—whether a hospital or a private practitioner—risks when a patient, or anyone else, is injured by the negligent maintenance of the provider's business premises. That not being the sort of liability that brought about passage of the Act, it is absurd to believe the legislature would have reached out to restrict such liability by including it within the Act."

*Lomax* at 739. The court concluded that the legislature did not intend a premises liability claim such as Lomax's to come within the coverage of the statute.

However, in *Methodist Hospital v. Rioux* (1982), Ind.App., 438 N.E.2d 315, we concluded that the Malpractice Act applied to a patient's complaint that the hospital negligently failed to prevent her fall and injury. The Riouxs' complaint placed in issue the appropriate care by the hospital during the patient's confinement, therefore, the Malpractice Act was held to be applicable. The *Lomax* court distinguished the *Rioux* decision and noted that Lomax's complaint had alleged not only a failure of appropriate care, but also a clear and unambiguous premises liability claim. The *Lomax* court stated, "[u]nlike the complaint in *Rioux*, this cannot possibly be construed as alleging the sort of negligence that the Medical Malpractice Act was intended to cover." *Lomax* at 742.

Two years before *Rioux* was decided, we held that parents suing to recover damages for the loss of services of and medical expenses for their minor child were required to comply with the provisions of the Malpractice Act. *Sue Yee Lee v. Lafayette Home Hospital, Inc.* (1980), Ind.App., 410 N.E.2d 1319. We concluded that the legislature intended to reach with the act, all actions where the underlying basis for liability is medical malpractice. Furthermore, we held that the act applied not only to cases where the patient was the plaintiff, but also to cases where a third party plaintiff's claim was derived from the patient, such as a parent's claim based upon a minor child's injury. *Sue Yee Lee* at 1324.

*Lomax*, *Rioux*, and *Sue Yee Lee* are similar in that in each case, the plaintiff was either the patient or one whose claim was derivative of the patient's claim. *See* Ind.Code § 16-9.5-1-1(c). The case before us is distinguishable because the plaintiff, the Estate, is not the patient nor is it a representative or one whose claim is derived from the patient. The defendants argue that claimants need not be patients in order to fall within the Malpractice Act's coverage and cite as authority *Thomas v. LeJeune, Inc.* (La.App. 2 Cir.1987), 501 So. 2d 1075. Clearly, *Thomas* is not binding on this court, but because the relevant provisions of Louisiana's Malpractice Act are virtually identical to ours, we consider the facts upon which *Thomas* was denied. In *Thomas*, the plaintiff fell in LeJeune's nightclub and subsequently was treated at a hospital for an ankle injury. Plaintiff sued LeJeune, and LeJeune filed a third party demand for indemnification and contribution against the physicians and hospital. The Louisiana court held that because the case involved a malpractice claim against a health care provider, it first had to go through the procedural requirements of the Malpractice Act. *Thomas* at 1077. Because the facts of the case before us are distinguishable, we decline to follow the reasoning in *Thomas*. In *Thomas*, LeJeune's third party claim involved only indemnification; thus, only the patient would actually benefit from any recovery. In addition, the focus of the case was the injury

to the patient. In contrast, recovery upon the Estate's claim will in no sense benefit the patient, Jackson. Furthermore, the focus of the Estate's action is not solely upon the appropriateness of the defendants' medical care, rather the claim was based also upon the defendants' failure to warn Gahl about Jackson's dangerous propensities.

The purpose of the Malpractice Act is unrelated to the sort of liability a health care provider risks when a patient commits a criminal act against a third party. While, under proper circumstances, a health care provider could be liable for a failure to warn, we do not believe that liability falls within the purview of the Malpractice Act. Ind.Code § 16–9.5–1–1(h) defines malpractice as "any tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, *to a patient.*" (emphasis added). Gahl was not a patient; therefore, although Gahl may have a valid claim for negligence based upon failure to warn, that claim is not governed by the provisions of the Malpractice Act.

In addition to a claim based upon failure to warn, the Estate alleged that the defendants' negligent failure to medicate and supervise Jackson resulted in the death of Gahl. Assuming that the defendants had a duty to properly medicate and supervise Jackson, we believe that a breach of that duty could constitute malpractice as to Jackson, but not as to third parties with whom Jackson might come into contact. Thus, although the Estate's claim is related to the defendants' alleged malpractice, it is not so interwined that it falls within the purview of the Malpractice Act. We agree with the trial court's decision denying the defendants' motion to dismiss based upon the Malpractice Act.

Affirmed.

CHEZEM, J., concurs.

HOFFMAN, J., dissents with separate opinion.

HOFFMAN, Judge, dissenting.

I respectfully dissent.

The state of Louisiana has a virtually identical Medical Malpractice Act to Indiana's. A similar case decided by the Louisiana court applying the Act is *Thomas v. LeJeune, Inc.* (1987), La.App., 501 So.2d 1075.

Defendant, Thomas, filed suit against LeJeune, a nightclub, when he stepped on a foreign object and fell, fracturing his ankle. LeJeune filed a third-party demand against the treating doctor and the medical center seeking indemnification and, in the alternative, contribution. LeJeune contended that the third-party defendants should be held accountable for the damages arising out of their treatment and postoperative care of Thomas.

Both third-party defendants filed exceptions of prematurity, based on the Louisiana Medical Malpractice Act, La.R.S. 40:1299.47(B)(1)(a)(i), which provides:

"No action against a health care provider ... may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel...."

The trial court sustained the exception of prematurity and the Louisiana Court of Appeals affirmed.

The court stated:

"It is recognized that, as a general rule under the cited statute, no action against a health care provider may be commenced in any court before the claimant's complaint has been presented to a medical review panel. *DeRouen v. Kolb,* 397 So.2d 791 (La.1981). Appellant contends, however, that the informal screening procedure by a medical review panel mandated by the Medical Malpractice Act only applies when the patient or claimant, or a representative of a patient or claimant, files suit against a health care provider. Here, of course, the party plaintiff, LeJeune, Inc., is not a patient of the third party defendants.

\* \* \* \* \* \*

Acceptance of LeJeune's argument would place a non-patient claimant in a

11263

medical malpractice action in a more favorable position than a patient claimant.

We subscribe to the holding of the cases cited above, concluding that all claims against health care providers for malpractice must first go through the Medical Malpractice Act procedure, regardless of whether the claimant is a patient or a non-patient." 501 So.2d at 1076, 1077.

Similarly, the Estate's claims should be subject to the Act since the claim is one based on alleged malpractice to a patient, Jackson.

The Act should cover *all claims* against health care providers whether the claimant is a patient or nonpatient. This is regardless of whether the patient will derive some benefit from the nonpatient claim. The essential element is that the claim is based on alleged medical malpractice as in this case.

The Medical Malpractice Act covers not only the alleged malpractice in the treatment of Jackson, but also the alleged malpractice in failing to warn Gahl of the potential danger of coming into contact with Jackson. This recognition of the potential dangerousness of a patient is also a part of the physician's diagnosis of his patient. A failure to take the necessary steps to protect a victim after the diagnosis of a patient can result in professional negligence. *Hedlund v. Superior Court of Orange Cty.* (1983), 34 Cal.3d 695, 194 Cal. Rptr. 805, 669 P.2d 41, 45–46.

The Estate's claim is derived from the medical diagnosis and care given to a patient, Jackson, and should be covered by the Medical Malpractice Act. The defendants' motion to dismiss should have been granted by the trial court.