Kathy COLLINS, Appellant
(Plaintiff Below),

v.

Pravin THAKKAR, M.D., Appellee
(Defendant Below).

No. 30A01–8911–CV–460.

Court of Appeals of Indiana,
First District.

April 10, 1990.

Robert W. York, Arthur R. Baxter, Jr., Robert York & Associates, Indianapolis, for appellant.

Robert W. Strohmeyer, Jr., Nana Quay–Smith, Bingham Summers Welsh & Spilman, Indianapolis, for appellee.

ROBERTSON, Judge.

The narrow issue we address in this interlocutory appeal is whether appellant Collin's three count complaint based upon theories of wrongful abortion, assault and battery, and intentional infliction of emotional distress alleges "torts" "based on health care or professional services rendered ... by a health care provider, to a patient."[1]  The trial court dismissed Collins's complaint for want of subject matter jurisdiction pursuant to Ind. Trial Rule 12(B)(1), agreeing with defendant-appellee consideration by a medical review panel.  We direct the parties to the second district's opinion in *Methodist Hospital of Indiana, Inc. v. Ray* (1990), Ind.App., 551 N.E.2d 463, a case which turned upon the issue.

On appeal, the burden of showing reversible error is upon appellant Collins.  All reasonable presumptions are indulged in favor of the rulings and judgment of the trial court, and the record must reveal the error assigned as the basis for the reversal sought.  The reviewing court will not presume anything in favor of the claim of error.  *Raymundo v. Hammond Clinic Ass'n* (1983), Ind., 449 N.E.2d 276, 280.

---

1. The parties are also at issue over the allocation of the burden of proof before the trial court on a Ind.Trial Rule 12(B)(1) motion for dismissal.  For this court to rule upon the issue at this time would be advisory, however, as Collins has pleaded sufficient facts to make clear the basis of Thakkar's liability, both parties have offered evidence in support of their respective positions, and the trial court, having reviewed the allegations of the complaint and factual basis presented, has ruled as a matter of law that the torts alleged arose from acts of "malpractice," were committed during the rendition of "health care," and as a consequence were proper subjects of

Thakkar that the allegations of the complaint place its substance with the purview of Indiana's Medical Malpractice Act, IND. CODE 16–9.5–1 *et seq.*, which requires submission of all proposed malpractice complaints to a medical review panel before an action may be initiated against a health care provider in a court of this state. Collins's position is simply that the Act's definition of malpractice does not incorporate the torts alleged in her complaint because her causes of action against Thakkar, though arising during the provision of health care, are not based upon anything Thakkar did in rendering health care or professional services.

Collins alleges in her complaint that after becoming Thakkar's patient in March, 1984, her relationship with him developed into a social relationship involving periodic sexual intercourse. In January, 1988, Collins consulted Thakkar about the possibility that she was pregnant by him and Thakkar agreed to perform an examination of her on January 9, 1988, after ordinary office hours, for purposes of determining whether she was pregnant. Collins alleges further that during the purported examination, Thakkar advised her that she was not pregnant and then, twice, without her consent and over her protest, did some act with the metal instrument inside her as to inflict excruciating pain upon her. Collins alleges that Thakkar intentionally aborted the birthing process of her unborn fetus, of which Thakkar was the father, causing her to miscarry.

With respect to each of the three counts, Collins alleges that Thakkar's wrongful conduct was intentional and the proximate cause of the severe physical and mental injuries she suffered. She seeks both compensatory and punitive damages with respect to each count. Collins has also filed with the Indiana Insurance Commission a complaint of medical malpractice which parrots the factual allegations of her civil complaint.

Thakkar's challenge to the trial court's exercise of jurisdiction over the subject matter of Collins's complaint turns upon the breadth of the statutory definitions of tort, malpractice, and health care. Thakkar concedes that the Act does not encompass every tort claim arising as a consequence of a patient-physician relationship, see, *e.g.*, *Midtown Community Mental Health Center v. Estate of Gahl* (1989), Ind.App., 540 N.E.2d 1259 (third party claims of negligent care and failure to warn, which were neither derived from patient nor brought for patient's benefit outside scope of Act); *Winona Memorial Foundation of Indianapolis v. Lomax* (1984), Ind.App., 465 N.E.2d 731; *Methodist Hospital of Ind., Inc. v. Ray* (1990), Ind.App., 551 N.E.2d 463 (allegations of ordinary premises liability not governed by malpractice legislation), but posits that the Act does include all torts arising during the provision of medical services. Thakkar draws support for this construction from the trilogy of appellate decisions which have spoken to the Act's applicability— *Methodist Hospital of Ind., Inc. v. Rioux* (1982), Ind.App., 438 N.E.2d 315; *Lomax*, 465 N.E.2d 731; and, *Ogle v. St. John's Hickey Memorial Hospital* (1985), Ind. App., 473 N.E.2d 1055, *trans. denied*—and distinguishes them based upon whether the tort alleged was committed while the patient was receiving medical care.

Certainly, each of these cases shares the common element identified by Thakkar. After all, the Act applies to claims of "malpractice", i.e. "tort[s] ... based upon health care or professional services rendered, ..." and defines "health care" as "any act, or treatment performed or furnished ... *during* the patient's medical care, treatment or confinement." Yet, our holdings in these decisions do not *preclude* the narrower ground espoused by Collins, that the Act applies solely to tort claims based on the rendering or failure to render health care or professional services. Indeed, although none of these decisions speaks directly to the issue raised by Collins's complaint, namely, whether certain deliberate wrongs committed by a health care provider during the rendering of medical care or treatment are "health care" or "professional services rendered" within the meaning of the statute, the cases can be read consistently with each other as stand-

ing for the proposition that the Act includes within its scope only those claims for damages originating from the giving of or failure to give appropriate health care or professional services.[2]

We are therefore led back to the Act itself for guidance as to its intended scope. In construing the Act, we will presume the legislature intended the language of the Act to be applied in a logical manner, consistent with the legislation's underlying goals and policy. *Detterline v. Bonaventura* (1984), Ind.App., 465 N.E.2d 215, 218, *trans. denied.* Words in a single section of the statute will be construed with due regard for all other sections of the Act and with regard for legislative intent to carry out the spirit and purpose of the Act. *Id.*

The definitions pertinent to our inquiry are as follows:

(h) 'Malpractice' means any tort or breach of contract based on health care or professional services rendered, or which should have been rendered by a health care provider, to a patient.

(g) 'Tort' means any legal wrong, breach of duty, or negligent or unlawful act or omission proximately causing injury or damage to another.

(i) 'Health care' means any act or treatment performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement.

I.C. 16–9.5–1–1(g), (h), (i) (1988).[3]

Notably, the definitions of "malpractice" and "health care" address the conduct of a "health care provider" as it relates to a patient. For our purposes, a "health care provider" is an individual "licensed or legally authorized by this state to provide health care or professional services as a physician ..." Indisputably then, the Act concerns itself with the behavior or practices of a physician acting in his professional capacity as a provider of medical services. Conversely, acts or omissions of a health care provider unrelated or outside the provider's role as a health care professional are not the Act's aim.

The Act's reach is also circumscribed in part by the language "for, to, or on behalf of a patient" contained in the definition of health care. Again, the language, read with due regard to the subject matter, suggests actions undertaken in the interest of or for the benefit of the patient's health, i.e. conduct engaged in by a physician which is curative or salutary in nature or effect. Acts or practices committed with something other than such a remedial purpose would again be excluded by implication. The text of the Act itself thus leads one to conclude that the General Assembly intended to exclude from the legislation's purview conduct of a provider unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill or judgment.

Such a construction of "health care or professional services rendered" conforms with both the Act's historical objective, to protect the public's vital interest in the availability of the professional services of physicians and other health care providers, *Johnson v. St. Vincent Hospital, Inc.* (1980), 273 Ind. 374, 404 N.E.2d 585, 589, and the design of the legislation as a means of effectuating that end. As we reiterated in *Lomax* and again in *Gahl,* the Act was a precisely tailored response to the difficulties encountered by health care providers in obtaining professional liability insurance; it is not related to the sort of liability a provider is exposed to generally, whether that be liability arising as a consequence of the condition of the health care provider's premises or a criminal act. The legislature's establishment of a medical re-

---

2. Juxtapose, for example, Rioux's claim of negligent failure to provide appropriate care to prevent a fall and Ogle's allegation of an act (protection) which should have been provided by the hospital during her confinement, against Lomax's complaint of negligent maintenance of the hospital floor and Ray's averment, "unrelated, at least on its surface, to any scheme of health care," *Ray,* at 466, that the health care provider negligently caused and permitted its premises to become infested and infected with Legionnaire's Pneumonia Virus.

3. Effective July 1, 1989, the General Assembly amended sections (g), (h), and (i) by substituting the word "a" for "any."

view panel, the sole purpose of which is to provide an expert determination on the question of whether a provider complied with the appropriate standard of care, suggests that the scope of the Act is likewise confined to actions premised upon the exercise of professional judgment. *See, Ray,* at 468–69.

■ Collins alleges the purposeful use of medical instruments in such a manner as to cause a miscarriage and concomitant pain to the patient, without the patient's consent and despite her protests. Under such circumstances, the conduct described is both wanton and gratuitous. In no way can it logically be said that the legislature intended such behavior to constitute the rendition of health care or professional services.[4] The acts as alleged, although plainly occurring during the rendition of health care, were not designed to promote the patient's health. Neither do they call into question Thakkar's use of the skill or expertise required of members of the medical profession.[5] As with an ordinary negligence action, the allegations of Collins's complaint present the kinds of factual issues capable of resolution by a jury without application of the standard of care prevalent in the local medical community.

■ For these reasons, we hold, upon the facts of this case, that the trial court erred as a matter of law in dismissing the complaint for want of subject matter jurisdiction. We caution that this decision is not intended to reflect an opinion on the applicability of the Act with respect to intentional torts as a class as there may well be such torts based upon the rendition of

health care or professional services which were intended to come within the Act's scope.[6]

Judgment reversed.

BAKER, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

Although compliance with the requirements of the Medical Malpractice Act is a condition precedent for the exercise of jurisdiction in the courts, I do not believe that the question is one of subject matter jurisdiction.

It is well established that subject matter jurisdiction is "the power to hear and determine cases of the general class to which the proceedings then before the court belong." *Mishler v. County of Elkhart* (1989), Ind., 544 N.E.2d 149, 151. Clearly, the trial court here has the power to hear and determine the issues presented by a complaint alleging wrongful abortion, assault and battery and intentional infliction of emotional distress. Accordingly, it had subject matter jurisdiction.

It is perhaps more accurate to say that one who has not met the requirements of a statute as a precondition for filing suit lacks "standing" to bring that suit, or that the court lacks the authority to exercise its jurisdiction in that particular case. It is incorrect to say that the court does not have subject matter jurisdiction. *See Wildwood Park Community Association v. Fort Wayne City Plan Commission*

---

4. *Cf., Meier v. Combs* (1970), 147 Ind.App. 617, 263 N.E.2d 194, *trans. denied.*

5. Our result is consistent with those of other jurisdictions interpreting similar statutes. *See, e.g., Nichols v. Wilson* (1983), 296 Md. 154, 460 A.2d 57 (statute governs all claims for "medical injury"); *Leger v. Delahoussaye* (1984), La.App., 464 So.2d 1 (statute expressly applies only to unintentional torts). *But cf., Glisson v. Loxley* (1988), 235 Va. 62, 366 S.E.2d 68.

6. *Cf., e.g. Gooley v. Moss* (1979), Ind.App., 398 N.E.2d 1314, *trans. denied,* with *Karl J. Pizzalotto, M.D., Ltd. v. Wilson* (1983), La., 437 So.2d 859.

Thakkar argues that one implication of the interpretation urged by Collins is that informed consent complaints will no longer be reviewed by a medical panel. In Indiana, a physician owes a duty to his or her patient to make reasonable disclosure of material facts relevant to the patient's decisions about treatment. An action prefaced upon the doctrine of informed consent is considered one based upon a breach of this duty, i.e., negligence, not battery, an intentional tort. *Kranda v. Houser–Norborg Medical Corp.* (1981), Ind.App., 419 N.E.2d 1024, 1037, *cert. denied,* 459 U.S. 802, 103 S.Ct. 23, 74 L.Ed.2d 39; *Joy v. Chau* (1978), 177 Ind.App. 29, 377 N.E.2d 670, 676–677, *trans. denied.*

(1979), Ind., 396 N.E.2d 678; *Home Build-er's Association of Indiana, Inc. v. Indiana Utility Regulatory Commission* (1989), 3d Dist.Ind.App., 544 N.E.2d 181 (Sullivan, J., concurring in part, 544 N.E.2d at 187); *Public Service Company of Indiana, Inc. v. Decatur County REMC* (1977), 1st Dist.Ind.App., 363 N.E.2d 995.

Be that as it may, I believe the allegations of the complaint fall within the purview of the Medical Malpractice Act and that until the requirements of the Act have been met, the Hancock Superior Court may not exercise its jurisdiction over this case.

Our statute, I.C. 16–9.5–1–1(h) (West's Ann.Code Supp.1989) defines malpractice, insofar as here pertinent, as "a tort." It does not limit malpractice to unintentional torts. Perhaps more importantly, the preceding section, (g), discloses that not only is negligence covered within the Act, but as well, other acts which are either "a legal wrong" or an "unlawful act." I not only discern no legislative intent to restrict the Malpractice Act to unintentional torts, from the manner in which the statute is phrased, I discern a contrary intent.

In *Gooley v. Moss* (1979), 1st Dist.Ind. App., 398 N.E.2d 1314, the court held that allegations of false imprisonment as a result of improper hospital admission procedures and a wrongful sterilization of the patient were "based upon health care or professional services which were rendered or should have been rendered." 398 N.E.2d at 1318. Because false imprisonment is an intentional tort, the case, as acknowledged by the majority here, indicates that intentional torts are not outside the purview of the Malpractice Act, so long as the conduct occurs in the clear context of medical care or services.

Here, the alleged torts occurred because defendant utilized his medical knowledge, experience and license to examine plaintiff and thereby effect an abortion. Although the personal relationship between the parties provided the opportunity for the tortious conduct, the conduct itself occurred in the course of defendant's activity as a health care provider.

The malevolent and intentional aspects of the torts do not remove them from the purview of "health care" as contemplated in the Act. It was not the mental state of defendant nor his motivation which proximately caused plaintiff's injuries and damages. It was his conduct. The intentional and malevolent nature of the alleged acts remove those acts from the realm of medical negligence but not from the coverage of the Act.

I would affirm the judgment of the trial court.