**Ann BREMER (Personal Representative) of the Estate of Paul Bremer and Ann Bremer, Appellant (Plaintiff),**

**v.**

**COMMUNITY HOSPITALS OF INDIANAPOLIS, INC., Appellee (Defendant).**

No. 49A02–9105–CV–222.

Court of Appeals of Indiana, Second District.

Dec. 30, 1991.

Dan L. Clayton, Indianapolis, for appellant.

Mary Nold Larimore, Nancy Menard Riddle, Ice Miller Donadio & Ryan, Indianapolis, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-plaintiff the Estate of Paul and Ann Bremer (Estate), appeals the dismissal of its claim that appellee-defendant Community Hospital of Indianapolis, Inc. (Community Hospital) misrepresented the quality and standard of its medical services and that Paul Bremer (Paul) died due to substandard care provided by Community Hospital.

We affirm.

## FACTS

The facts most favorable to the non-moving party are outlined in the Estate's

complaint, which was filed on March 30, 1990:

> "1. That Ann Bremer is the personal representative of the estate of Paul R. Bremer.
>
> 2. That at all times relevant, Community Hospital ... was a supplier of health care services pursuant to I.C. 24–5–0.5–2(3).
>
> 3. That on or about March 30, 1988, Paul R. Bremer was admitted to Community Hospital for the care and treatment of his large cell lymphoma and respiratory illness and that he died intestate on May 9, 1988 while still hospitalized at Community Hospital.
>
> 4. That Paul R. Bremer was a consumer of health care services pursuant to I.C. 24–5–0.5–2.
>
> 5. That Community Hospital ... knew or should have known that the care and treatment rendered by it was below the standard of care required by it.
>
> 6. That Community Hospital ... engaged in deceptive acts by representing that the health care rendered by it was of a particular standard and quality.
>
> 7. That as a direct and proximate result of the substandard care provided by Community Hospital ... Paul R. Bremer died on May 9, 1988."

*Record* at 2–3.

On October 25, 1990, Community Hospital moved to dismiss the complaint because the Estate had failed to comply with the requirements of Indiana's Medical Malpractice Act[1] (Malpractice Act) prior to filing the complaint. Supporting the motion was an affidavit of Dianna Pitcher, office manager for the Patients' Compensation Division of the Indiana Department of Insurance (Department), in which she averred that the Estate had submitted a complaint to the Department pursuant to the Malpractice Act, but that a medical review panel had not yet been formed to hear the complaint and issue an opinion.

On January 7, 1991, the day before the hearing on the motion to dismiss, the Estate responded that its claim was not based on medical negligence, but on the Deceptive Consumer Sales Act.[2] Following the hearing, the trial court concluded that the allegations in the Estate's complaint were based on medical negligence and dismissed the case:

> "The provision of health care services is not excluded from the Indiana Deceptive Practices Act. However, the plaintiff's claim is based on the nature and standard of health care provided by the defendant and is therefore derivative of a medical malpractice action. The allegations of plaintiff's Complaint fall within the scope of the Indiana Medical Malpractice Act. The plaintiff has not complied with the Indiana Medical Malpractice Act provisions establishing the prerequisites to filing suit in State Court. Therefore, defendant's motion to dismiss must be granted and plaintiff's Complaint dismissed for lack of subject matter jurisdiction...." [3]

*Record* at 23(a)–24.

### ISSUE

On appeal, the Estate raises two issues, which we consolidate into one:

Did the trial court err in dismissing the Estate's complaint?

### DECISION

PARTIES' CONTENTIONS—The Estate contends that because its complaint satisfies the requirements of the Deceptive Sales Act and that act does not exclude suppliers of medical services, the trial court

---

1. Ind.Code 16–9.5–1–1 through IC 16–9.5–9–10 (1991 Supp.).

2. Ind.Code 24–5–0.5–1 through IC 24–5–0.5–10 (1991 Supp.).

3. As the trial court considered Community Hospital's memorandum of law and Pitcher's affidavit along with the hospital's motion to dismiss and the Estate's response, the trial court treated the motion as one for summary judgment rather than dismissal. *See In re Marriage of Moser* (1984), Ind.App., 469 N.E.2d 762; *In re Marriage of Murray* (1984), Ind.App., 460 N.E.2d 1023. As the trial court gave both parties the opportunity to present additional materials to the court and held a hearing on the motion, the parties were not prejudiced. *See Mathys v. City of Berne, Inc.* (1986), Ind.App., 501 N.E.2d 1142.

erred in dismissing the complaint for failure to follow the procedural requirements of the Malpractice Act. Community Hospital responds that the Estate's complaint was based on negligence and, as such, the trial court did not err in dismissing the complaint because a medical review panel had not yet issued an opinion as required by the Malpractice Act.

DECISION—The trial court did not err in dismissing the complaint.

The Estate points to the allegation in its complaint, "[t]hat Community Hospital ... engaged in deceptive acts" by misrepresenting the quality of its care, *record* at 2, as a basis for its belief that its cause of action falls within the confines of the Deceptive Sales Act so it did not have to wait for an opinion from the medical review panel before pursuing its complaint in court.

However, we conclude that the main thrust of the Estate's complaint is medical malpractice. In that document, the Estate alleges that Community Hospital provided "substandard care" for the care and treatment of Paul and "[t]hat Community Hospital ... knew or should have known that the care and treatment rendered by it was below the standard of care required by it." *Record* at 2. The Estate also claims that "as a direct and proximate result of the substandard care provided by Community Hospital ... Paul Bremer died on May 9, 1988." *Record* at 2–3. These allegations certainly meet the statutory definition of "malpractice" contained in the Malpractice Act:

> "'Malpractice' means a tort or breach of contract based on health care or professional services rendered, or which should have been rendered, by a health care provider, to a patient."

IC 16–9.5–1–1(h).

Because Community Hospital has not challenged the Estate's allegation that the hospital misrepresented the quality of care it provided, we must accept that allegation as true for the purpose of determining whether the trial court's dismissal of the Estate's claim was proper. *Ancich v. Mobil Oil Corp.* (1981), Ind.App., 422 N.E.2d

1320. Upon doing so, it is apparent that the Estate's claim, on its face, satisfies the statutory requirements for proceeding under either the Deceptive Sales Act or the Malpractice Act: Community Hospital is a "supplier" of consumer services as provided by IC 24–5–0.5–2 and a "health care provider" as defined by IC 16–9.5–1–1. Paul was a "consumer" of Community Hospital's services as provided by the Deceptive Sales Act and also a "patient" as defined by IC 16–9.5–1–1. The alleged conduct of Community Hospital met the requirement of a "deceptive act" under IC 24–5–0.5–3 and the definition of "malpractice" as provided by the Malpractice Act.

The Malpractice Act may not apply to all cases in which a health care provider is a party. The Estate correctly cites several cases in which this court has held that a particular claim against a medical provider could be pursued without first complying with the Malpractice Act. *See Collins v. Thakkar* (1990), Ind.App., 552 N.E.2d 507, *trans. denied* (doctor performed abortion on patient without her consent); *Methodist Hospital v. Ray* (1990), Ind.App., 551 N.E.2d 463, *aff'd* 558 N.E.2d 829 (hospital negligently allowed premises to become infected with Legionnaire's virus); *Midtown Community Mental Health Center v. Estate of Gahl* (1989), Ind.App., 540 N.E.2d 1259, *trans. denied* (failure to warn of dangerous propensities of mental patient who shot probation officer); *Winona Memorial Foundation v. Lomax* (1984), Ind. App., 465 N.E.2d 731 (hospital negligently maintained premises resulting in injury to patient).

The above cases are readily distinguishable. *Collins, Ray,* and *Lomax* all involved cases in which this court concluded that the complained of conduct was not "malpractice" as defined by the Malpractice Act. In *Gahl,* this court determined that the purpose of the Malpractice Act was unrelated to the sort of liability a health care provider risks when a patient commits a criminal act against a third party.

In this case the Estate's allegations are substantially grounded in malpractice. The

question then becomes whether a malpractice claim can be brought under an alternative theory, a violation of the Deceptive Sales Act, so as to allow a plaintiff to bypass the procedural requirements of the Malpractice Act.[4]

In *Collins*, this court reflected on the legislative purpose behind the requirement that a medical review panel be formed to hear the complaint and issue an opinion:

> "The legislature's establishment of a medical review panel, the sole purpose of which is to provide an expert determination on the question of whether a provider complied with the appropriate standard of care, suggests that the scope of the Act is likewise confined to actions premised upon the exercise of professional judgment."

*Collins, supra,* at 510–11.

In *Collins*, we concluded that the allegation that the defendant performed an illegal abortion on a patient without her consent does not "call into question [the doctor's] use of the skill or expertise required of members of the medical profession," *id.* at 511, and that the allegations raised by the plaintiff, as with cases involving ordinary negligence, "were capable of resolution by a jury without application of the standard of care prevalent in the local medical community." *Id.* at 511.

The allegations in this case relate directly to the standard of care Community Hospital was required to provide and whether the hospital met that level of care in its treatment of Paul. In its complaint, the Estate claims that Community Hospital "knew or should have known that the care and treatment rendered by it was below the standard of care required by it." *Record* at 2. The Estate also charges that "as a direct and proximate result of the substandard care provided by Community Hospital ... Paul R. Bremer died...." *Record* at 2–3.

These are not allegations "capable of resolution by a jury without application of the standard of care prevalent in the local medical community." *Collins, supra,* at 511. They require expert medical opinion to determine the standard of care required in the community and whether that standard was met by Community Hospital. As such, the trial court quite correctly concluded that the Estate's claim was subject to the Malpractice Act because it was "based on the nature and standard of health care provided by the defendant and ... therefore derivative of a medical malpractice claim." *Record* at 23(a). The trial court did not err in dismissing the complaint.

Judgment affirmed.

SHIELDS and BARTEAU, JJ., concur.

---

**4.** The procedural requirements for pursuing a claim under the Deceptive Sales Act differ substantially from the Malpractice Act. A consumer asserting a claim under the Deceptive Sales Act can, without delay, pursue the complaint in court. Under the Malpractice Act, however, a patient *must* first file a complaint with the Insurance Commissioner, a medical review panel must be formed to hear the complaint, and a written opinion by the panel issued. IC 16–9.5–9–2. Only after the medical review panel issues its opinion, can the patient commence an action in court. IC 16–9.5–9–2.