# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**KAREN R. ORR**
Stuart & Branigin LLP
Lafayette, Indiana

ATTORNEYS FOR APPELLEES
CRYSTAL WEST AND WILLIAM WEST:

**JAMES R. FISHER**
**DEBRA H. MILLER**
Miller & Fisher, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
STEPHEN W. ROBERTSON,
COMMISSIONER OF THE INDIANA
DEPARTMENT OF INSURANCE,
PATIENT'S COMPENSATION FUND:

**A. RICHARD M. BLAIKLOCK**
**CHARLES R. WHYBREW**
**RYAN J. VERSHAY**
Lewis Wagner, LLP
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

**FILED**
Dec 16 2014, 1:07 pm

CLERK
of the supreme court,
court of appeals and
tax court

| | | |
|---|---|---|
| PREFERRED PROFESSIONAL INSURANCE COMPANY, and HILLS INSURANCE COMPANY, INC., | ) ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 49A02-1403-CT-163 |
| CRYSTAL WEST, WILLIAM WEST, and INDIANA DEPARTMENT OF INSURANCE, PATIENT'S COMPENSATION FUND, | ) ) ) ) | |
| Appellees-Plaintiffs and Co-Defendants. | ) ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Heather A. Welch, Judge
Cause No. 49D12-1209-CT-37783

**December 16, 2014**

**OPINION - FOR PUBLICATION**

**KIRSCH, Judge**

Crystal West ("Crystal") was injured in a workplace accident, when her coworker ("Michael"), while operating heavy machinery, hit the cherry-picker truck in which Crystal was riding, causing Crystal to fall twenty-nine feet and sustain catastrophic and permanent injuries. Crystal and her husband William West (collectively, "the Wests") filed a complaint for declaratory judgment in the Marion Superior Court ("Marion County action") against Preferred Professional Insurance Company ("PPIC"), Hills Insurance Company ("Hills"), Indiana Department of Insurance ("IDOI") and the Patient's Compensation Fund ("PCF"), seeking a declaration that Indiana's Medical Malpractice Act ("MMA") did not apply to the Wests' claims of negligence, which the Wests were pursuing against Michael's health care providers by way of a complaint filed and pending in the St. Joseph Circuit Court ("St. Joseph action") and a proposed complaint simultaneously filed with the IDOI. In the Marion County action, the Wests and defendant PCF each filed a motion for summary judgment, seeking a determination that the MMA was not applicable to the Wests' claims, and PPIC and Hills (collectively, "Insurance Defendants") filed a cross-motion for summary judgment, asserting that the Wests' claims fell within the purview of the MMA. The Marion County trial court granted the Wests' and PCF's motions for summary judgment and denied the Insurance Defendants' motion, finding that the Wests' allegations constituted claims of common law negligence, not medical malpractice, and thus do not fall within the MMA. The Insurance Defendants appeal and raise the following restated issues:

> I. Whether it was permissible for Marion County to issue a declaratory judgment on the applicability of the MMA to the Wests' pending claims in the St. Joseph action; and

2

II. Whether the trial court's grant of summary judgment, which determined that the Wests' claims do not fall within the purview of the MMA, was erroneous.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On February 19, 2010, Crystal suffered injuries as a result of a workplace accident in Crawfordsville, Indiana. She was working on an elevated mechanical platform, often called a "cherry picker," twenty-nine feet from the ground, when the cherry picker was hit and knocked over by a Turret truck, similar to a fork lift, operated by Michael. Crystal sustained serious injuries. At that time, Michael was taking narcotic pain relief medication for cervical strain, due to an injury unrelated to work. Michael was under the medical care of his physician, Dr. M.

On February 2, 2012, the Wests filed the St. Joseph action, namely an anonymous complaint for negligence and damages against Michael's healthcare providers, Dr. M, Nurse P, and health care provider entities X, Y, and Z (collectively "Healthcare Defendants").[1] The complaint alleged a failure to advise Michael of the risks and known side effects of his narcotic prescription for pain, to address and discuss the effects of the medication, and to warn Michael of the impairment expected to be produced by the narcotic

---

[1] The St. Joseph complaint was filed anonymously pursuant to the provision of the MMA, which requires litigants to maintain the anonymity of defendant healthcare providers until such time as a decision is rendered by the medical review panel. Ind. Code § 34-18-8-7.

pain medication, all of which caused the accident that injured Crystal.[2] The Wests simultaneously filed a proposed complaint against the same Healthcare Defendants with the IDOI ("Proposed Complaint"). As is common in medical malpractice actions, the St. Joseph trial court ordered that the Healthcare Defendants would not be required to answer the St. Joseph complaint or otherwise respond until the medical review panel had rendered a decision, and the Wests had amended the St. Joseph complaint to identify the Healthcare Defendants by name.

On April 9, 2012, the Wests filed in the St. Joseph action a Motion for Preliminary Determination of Law, as provided for by the MMA,[3] asking the St. Joseph trial court to determine that the Wests' claims were not covered by the MMA. The PCF requested and was granted permission to intervene in the St Joseph action, siding with the Wests for the proposition that the MMA did not apply. The Healthcare Defendants opposed any preliminary determination of law, arguing that because they had not yet answered the Wests' St. Joseph complaint and discovery was not yet complete, the evidence and facts necessary to make a determination of the application of the MMA were not before the trial

---

[2] The Wests' claims are based on injuries suffered by Crystal, not Michael, and there is no allegation of a physician-patient relationship between Crystal and the Healthcare Defendants. Michael is not a party to any litigation with the Wests or the Healthcare Defendants relating to Dr. M's treatment of Michael. *Appellants' App*. at 18.

[3] *See* Ind. Code § 34-18-11-1 ("A court having jurisdiction over the subject matter and the parties to a proposed complaint filed with the commissioner under this article may, upon the filing of a copy of the proposed complaint and a written motion under this chapter, preliminarily determine an affirmative defense or issue of law or fact that may be preliminarily determined under the Indiana Rules of Procedure[.]"); *Harlett v. St. Vincent Hosps. & Health Servs*., 748 N.E.2d 921, 923-24 (Ind. Ct. App. 2001) (Indiana Code section 34-18-11-1(c) vests jurisdiction with trial court during time after proposed complaint is filed but before medical review panel gives panel's written opinion under Indiana Code section 34-18-10-22), *trans. denied*.

4

court. Insurance Defendants also asserted that the Wests' motion was not in an appropriate procedural posture, suggesting that the Wests' motion was effectively a motion to dismiss their own complaint. On August 29, 2012, the St. Joseph trial court denied the Wests' Motion for a Preliminary Determination of Law, stating, "At this stage of the proceedings, this Court, in the exercise of its discretion, declines to assert its statutory authority to make a preliminary determination of an issue of law in this cause of action." *Appellant's App*. at 73. However, it added the following in a footnote:

> Had the Court decided to exercise its jurisdiction at this stage of the proceedings and entered a preliminary determination of law, based on the record before the Court, the Court would have likely ruled that the proposed complaint sounds in medical malpractice and is covered by the Indiana Medical Malpractice Act, Ind. Code § 34-18-1, *et seq*.

*Id*. The St. Joseph trial court denied *pendente lite* the Wests' Motion for Preliminary Determination.

About a month later, on September 26, 2012, the Wests filed the Marion County action, a complaint for declaratory judgment against Insurance Defendants and PCF.[4] The Wests asserted in their complaint, among other things:

> A legal issue exists concerning whether the allegations of the Complaints filed in this matter fall within the provisions of the [MMA], and must be resolved pursuant to the procedural and substantive provisions of that Act, or whether the allegations instead state a common law action outside of that Act, which must be resolved pursuant to the substantive and procedural requirements established at common law.

---

[4] The Marion County declaratory judgment complaint did not name as defendants the Healthcare Defendants; it named the insurers for the Healthcare Defendants.

*Id*. at 39. The determination of whether the Wests' claims were medical malpractice or were, instead, common law negligence would affect not only how and where the case would be litigated but also which insurance policies and coverage would be available to the Wests should they ultimately be successful in their claims.[5]

In November 2012, the Insurance Defendants filed a motion to dismiss the Wests' declaratory judgment complaint under Indiana Trial Rule 12(B)(8), arguing that the same case was pending in the St. Joseph Circuit Court and that declaratory relief was improper because it would terminate the controversy. The Wests responded and argued that it was necessary that some court make the initial determination of whether the MMA applies to the Wests' claims. With a determination that the MMA does not apply, the medical review panel would be dismissed, and the medical review procedure, which could take a number of years to complete, would be avoided entirely; conversely, with a determination that the Wests' claims were within the scope of the MMA, the general liability claims would not be pursued. At the hearing on Insurance Defendants' motion to dismiss, the Wests' counsel opined, "[T]he medical malpractice case will determine only whether or not the doctor committed [medical malpractice] *if* the [A]ct applied. It's not going to [] determine *whether* or not the [A]ct does apply. The review panel is not gonna make [the] decision

---

[5] It appears that PPIC and Hill provide, in some combination, professional liability coverage and general liability coverage for Healthcare Defendants. The medical malpractice polic(ies) at issue have coverage limits of $250,000, and by statute, PCF provides up to an additional $1,000,000 in excess coverage. Some or all of the Healthcare Defendants were covered by separate general liability polic(ies), for claims not brought under the MMA, with coverage of $250,000 and excess general liability coverage of $5,000,000 per occurrence.

on whether they think the [A]ct applies." *Tr. of Motion to Dismiss Hr'g* at 19 (emphasis

added).  He continued,

> So our only opportunities now are to ask for a declaratory judgment to ask
> for a court to resolve that issue, or go down one path till its conclusion.  Then
> go through the proceedings supplemental till its conclusion.  And then if
> we're correct on that one, we'd start down the second path – my grandson
> will start down the second path to try to get this resolved.  And that's just a
> crazy way [] to try to resolve this issue.  This issue has to be resolved an[d]
> only one court has to resolve it but one court some place has to and it should
> be resolved [at the] beginning of the process not at the very end of one of the
> paths that might've been the wrong path to begin with.
>
> The point is this court or some courts gotta decide which way we're going.
> Are we going to a panel, are we going to have the medical malpractice
> procedure followed, or are we going to use the rules applicable to civil action
> of general liability.  And if we don't pick right, we're gonna do it twice.

*Id.* at 18, 24.

After a hearing, the Marion County trial court denied the Insurance Defendants'

motion to dismiss on March 15, 2013.  In its order, the Marion County trial court reasoned,

> In this case, a declaratory judgment will significantly narrow the issues and
> will determine whether the [Wests'] claim for negligence and damages may
> be pursued under the [MMA] or whether it cannot, which determines which
> insurance policy would be applicable if the trier of fact found the healthcare
> providers liable.  A preliminary determination as to which of the [Wests']
> pending claims against the medical providers falls within the scope of the
> [MMA], if any, could serve the useful purpose of avoiding the delay and
> expense of proceeding under inapplicable procedural substantive rules. . . .
> At a minimum, the determination of this question serves to narrow the issues
> involved, thus allowing for a more efficient resolution of the entire
> controversy.
>
> . . . .
>
> In the case at hand, the declaratory judgment would serve the purpose of
> determining whether the [MMA] applies to the [Wests'] case in the St.
> Joseph Circuit Court and whether it falls within or not within the [MMA]

7

will determine whether the PPIC policy or the Hills policy would be applicable.

*Appellants' App*. at 99-100. Ultimately, the Marion County trial court determined, "It is in the interest of justice that the most expedient and effective remedy is procured, and therefore declaratory judgment is applicable in this case," and it denied the Insurance Defendants' motion to dismiss. *Id*. at 100.

Thereafter, on September 16, 2013, the Wests filed in Marion County a "Submission in Support of Declaratory Judgment," asking the Marion County trial court for a determination that their claims pending in St. Joseph County were not subject to the MMA. Two days later, the PCF filed a motion for summary judgment also seeking a determination that the Wests' claims were not subject to the MMA. The Insurance Defendants timely filed their response and designation of material facts precluding summary judgment, as well as a cross-motion in support of a finding that the MMA applied to the Wests' claims.

Following a hearing, the Marion County trial court, in February 2014, issued findings of fact, conclusions thereon, and judgment pursuant to the request of one or more of the parties.[6] The trial court explained that, although its decision regarding the applicability of the MMA was based upon the Wests' recitation of allegations as stated in their summary judgment filings, "This Court expresses no opinion concerning these factual

---

[6] We note that a few months after their motion to dismiss was denied in Marion County, Healthcare Defendants filed in the St. Joseph action a motion for preliminary determination of law and motion for summary judgment, as to the applicability of the MMA to the Wests' claims. The St. Joseph trial court agreed to coordinate briefing schedules so that the parties could simultaneously submit briefs in Marion County and St. Joseph County. Oral argument was heard in both courts in the same week, and the parties agreed to a simultaneous filing date of January 15, 2014 for submitting proposed findings and conclusions in each trial court. The Marion County trial court issued its findings and conclusions on February 14, 2014, and the St. Joseph trial court did not issue a ruling. On March 14, 2014, the Wests filed an Indiana Trial Rule 53.1(E) motion in the St. Joseph action, and on May 29, 2014, a special judge was appointed.

8

contentions or legal theories, except to the extent that this Court finds these to be the Plaintiffs' allegations and legal theories for the purpose of determining the applicability of the Act." *Id*. at 21. Those factual allegations upon which the Marion County trial court based its decision are, summarized, as follows.

Michael suffered from shoulder and neck pain caused by exercising and was being treated by orthopedic physician Dr. M, who worked at entity X ("the medical practice"). On February 8, 2010, Dr. M prescribed Medrol, a non-narcotic pain medication, to Michael. The next day, Michael telephoned the medical practice to explain he was still in pain, and he asked for a stronger pain reliever. He spoke to Nurse P during this phone call. Nurse P is not a nurse, but is a certified athletic trainer, works as Dr. M's assistant, and is considered the "acting nurse" at the medical practice. Because Dr. M was not available, Dr. H reviewed Michael's file and prescribed Norco, a narcotic pain medication containing hydrocodone and Tylenol.[7] Dr. H gave the chart back to Nurse P and told her to call Michael to discuss the Norco prescription with him and advise him about the medication's side effects and not to operate heavy machinery. She was then to call in the prescription to the pharmacy. Michael does not remember the specifics of the phone conversation with Nurse P, but alleges he did not receive any warning. Nurse P says that she always advises a patient of the risks of the medicine and stated she was certain that she would have warned Michael not to take the medication at or before work, while driving, or while operating any machinery. It was her standard practice to give the patients instruction and precautions,

---

[7] Dr. H was not named as a defendant in any complaint.

and it was required by office procedure. While or after talking to Michael, Nurse P completed a message slip with the notation "Called in meds and called patient." *Appellants' App*. at 658. The notation of "called patient" was a shorthand phrase used by Nurse P to reflect that she had spoken directly to the patient and given him or her the advisements regarding the medication as instructed by the physician. *Id*. at 606-07. Michael filled the prescription for Norco on February 9, 2010, and again on February 14, 18, and March 6.[8]

On February 15, 2010, five days after being prescribed Norco and filling that prescription, Michael returned for a follow-up appointment with Dr. M. At the time that he saw Michael, Dr. M was not aware that Dr. H had prescribed narcotics to Michael, and Dr. M told Michael that he was released to work without restrictions. The issue of Norco being prescribed and taken was not discussed at the appointment.

When a prescription is given by phone, the procedure at the medical practice was to place a paper message slip into a patient's file indicating that a telephone prescription had been called into a pharmacy for that patient. The message slips were not a specific employee's responsibility to file; rather, different people handled the task as they had time. Nurse P's message slip about her call to Michael sat on a desktop in a filing basket, and had not yet been filed in Michael's patient file, by the time Dr. M saw Michael for that February 15 follow-up appointment. Therefore, Dr. M did not know Michael had been prescribed the narcotics. Dr. M testified that had he known that, he would not have told

---

[8] The testimony and evidence concerning the prescription bottle and pharmacy warnings, what they said, and whether Michael read them, is beyond the scope of the issue before us, and thus we do not address it.

Michael that he was free to go back to work, and, furthermore, he would have warned Michael, not only that he should not operate heavy machinery, but also, not even to be in the same vicinity as heavy machinery. On February 19, Michael was at work and operating a Turret truck when he hit the cherry picker vehicle on which Crystal was standing almost thirty feet from the ground, causing her to fall.

Based upon the Wests' allegations, the Marion County trial court issued findings of fact, conclusions thereon, and judgment on February 14, 2014, determining that the Wests' claims were claims of common law negligence and not claims of medical malpractice.[9] In reaching its decision, the trial court determined that there was no dispute concerning the appropriateness of the prescription given to Michael, no orthopedic medical determination for a medical review panel to review, and no issue concerning the warnings that the physicians had decided were the appropriate warnings to be given to Michael. *Appellants' App*. at 25-26. The trial court also analyzed the statutory language of the MMA as that defines a "patient," Indiana Code section 34-18-2-22, and reviewed relevant case law, concluding that certain "or otherwise" language of the statute did not extend patient status

---

[9] We note that, at the time the Marion County trial court issued findings of fact, conclusions thereon, and judgment, various motions for summary judgment were pending in the St. Joseph action, with the Healthcare Defendants seeking judgment on the Wests' claims based on a lack of duty, breach, and causation and, alternatively, seeking partial summary judgment on the determination that the claims are governed by the MMA. The PCF joined Healthcare Defendants' motion for summary judgment on the non-existence of a duty, and PCF filed its own motion for summary judgment, contending that the MMA is not applicable to the Wests' claims. The Wests also filed a cross-motion for partial summary judgment. In August 2014, the St. Joseph County judge issued an order granting the Wests' motion for partial summary judgment and denying Healthcare Defendants' motion, finding that the Healthcare Defendants owed a duty to Crystal to warn Michael about the known side effects of Norco and finding questions of fact existed as to breach and causation. PCF's motion for summary judgment, alleging that the Wests' claims are common law negligence and not within the MMA, was stayed pending the resolution of this appeal from the Marion County declaratory judgment.

to the Wests, such that their claims would be subject to the limitations of the MMA. *Id*. at 29. The trial court further found that the legislative history and purposes of the MMA support the conclusion that the Wests' claims are outside the scope of the MMA.[10]

Following the Marion County trial court's entry of summary judgment in favor the Wests and PCF, Insurance Defendants now appeal.

## DISCUSSION AND DECISION

### I.    Propriety of a Declaratory Judgment

Initially, Insurance Defendants assert that, for several reasons, it was error for the Marion County trial court to enter declaratory judgment under the facts and circumstances of this case. They assert that there was no live or justiciable insurance coverage dispute about the application or relationship of the policies, especially considering that Insurance Defendants never asserted that there was no coverage or that they would not pay, and, therefore, a declaratory judgment was not appropriate. Insurance Defendants also suggest that a declaratory judgment would not terminate the controversy, since it would remain pending in the St. Joseph Circuit Court, regardless of any Marion County determination.

The stated purpose of Indiana's Uniform Declaratory Judgments Act ("UDJA"), Indiana Code chapter 34-14-1, is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations," and it "is to be liberally construed and administered." Ind. Code § 34-14-1-12; *Quiring v. GEICO Gen. Ins. Co.*, 953 N.E.2d 119, 126 (Ind. Ct. App. 2011). Indiana Trial Rule 57 provides: "The existence

---

[10] We commend the trial court on the thoroughness of its findings of fact, conclusions thereon, and judgment, which greatly aided our appellate review.

12

of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." *Quiring,* 953 N.E.2d at 126. The test to determine the propriety of declaratory relief is whether the issuance of declaratory judgment will effectively solve the problem involved, whether it will serve a useful purpose, and whether another remedy is more effective or efficient. *Id.*

In this case, the MMA affects the rights, status, and legal relations of the parties. The issue of the applicability of the MMA to the claims alleged by the Wests is a question for which an early determination is necessary in order to avoid the delay and expense of proceeding under inapplicable procedural and substantive rules, whether that be the MMA or a common law negligence case. Such a determination in the context of this case is useful to narrow the issues and determine the path of the case; it determines when the case can be tried, the applicable theories and defenses, including expert testimony, and available limits of liability. Furthermore, as noted by the Marion County trial court, a resolution of the applicability of the MMA by declaratory judgment is necessary in order for any possible resolution by settlement to occur. *Appellants' App.* at 97. We find that a declaratory judgment was permissible and appropriate under the facts of this case.

In a related argument, Insurance Defendants maintain that the case should have been dismissed on their Indiana Trial Rule 12(B)(8) motion, which permits dismissal when the same action is pending in another court of this state. Trial Rule 12(B)(8) applies when the same parties are litigating the same issues in two Indiana courts at the same time. Here, there are different parties, namely defendants, in each court; Healthcare Defendants are named in the St. Joseph action, and Insurance Defendants are named in the Marion County

13

action. Even if, as the Insurance Defendants assert, the parties are considered "substantially the same" for purposes of Trial Rule 12(B)(8), *Appellants' Br*. at 17-18 (citing *Beatty v. Liberty Mut. Ins. Group*, 893 N.E.2d 1079, 1084 (Ind. Ct. App. 2008), the remedies sought in each court are different. The Wests seek to recover damages in the St. Joseph action, and seek declaratory relief in the Marion County action. Insurance Defendants also urge that principles of comity favor dismissal, as Indiana courts respect decisions and proceedings of other courts, and the value of comity is to promote uniformity of decision by discouraging repeated litigation of the same question. *Appellants' Br*. at 23. They maintain that the "real reason" that the Wests filed in Marion County was because they wanted "a different ruling regarding the applicability of the [MMA] after the St. Joseph Circuit Court suggested its ultimate ruling might be unfavorable to them," and that the "multi-court maneuvering" will likely result in conflicting judgments and confusion that Trial Rule 12(B)(8) was designed to avoid. *Id*. at 21.

Contrary to Insurance Defendants' suggestion that the Wests simply desired a different ruling, the record before us indicates that the Wests simply wanted any ruling at all. The St. Joseph trial court declined to issue a preliminary determination of law, thus making no decision, which was its option to do and was likely made with careful evaluation. Indeed, as the parties note, the St. Joseph Circuit Court's jurisdiction to make a preliminary determination of law stemmed from the MMA, and if that court made the determination that the Wests' claims did not fall within the MMA, and thus the MMA did not apply, then it could be questioned on what basis the St. Joseph County court had

14

jurisdiction to make a preliminary determination of law. That may have been a procedural predicament that the St. Joseph court decided to avoid.

The Wests urge, and we agree that, under the circumstances before us, it would not be expeditious or efficient, judicially or otherwise, for the Wests to wait for the conclusion of the medical review panel process to determine if the MMA applies. Even if a decision was reached that a standard of care was breached, a party could appeal and argue it was not medical malpractice in the first place, and the whole case would have be re-litigated. *See Fairbanks Hosp. v. Harrold*, 895 N.E.2d 732, 738 (Ind. Ct. App. 2008) (after medical review panel had determined that Fairbanks failed to comply with applicable standard of care, plaintiff filed state court claim and trial court determined facts did not present claim for medical malpractice, and court of appeals affirmed), *trans. denied*.

With regard to the suggestion that the Marion County court's declaratory judgment ruling could result in conflicting and confusing judgments, the then newly-appointed special judge in the St. Joseph action issued an order on July 24, 2014, stating that it would defer ruling on whether the MMA applies to the Wests' claims until the conclusion of the appeal of Marion County action. Specifically, the order read:

> The Court agrees with the [Wests] that the issue of the applicability of the MMA to this lawsuit will be effectively determined by the pending appeal of the declaratory judgment ruling in Marion County. Accordingly, this Court will defer ruling upon the question of the applicability of the MMA in this Court, until there has been a final determination of the pending appeal. Upon notification to this Court of the final appellate decision, this Court will enter its ruling on the applicability of the MMA to this case, with the advantage of the Court of Appeals' final determination of that issue in the declaratory judgment appeal for guidance.

*Wests' Appellees' App*. at 48.

15

Under the facts and circumstances of this case, we find that it was permissible and proper for the Marion County trial court to issue a declaratory judgment on the applicability of the MMA to Wests' pending claims in St. Joseph County.

## II.     Applicability of the MMA

Insurance Defendants assert that the Marion County trial court erred when it entered summary judgment in favor of the Wests on the Wests' complaint for declaratory judgment, determining that the MMA did not apply to the Wests' negligence claims pending in St. Joseph County. On appeal from the grant or denial of summary judgment, we face the same issues that were before the trial court and follow the same process. *Ferrell v. Dunescape Beach Club Condominiums Phase I, Inc*., 751 N.E.2d 702, 708 (Ind. Ct. App. 2001). Summary judgment is appropriate only where the designated evidence shows there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We do not weigh the evidence, and we liberally construe all designated evidence in the light most favorable to the nonmoving party. *Ferrell*, 751 N.E.2d at 708. A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant has the burden of demonstrating that the grant of summary judgment was erroneous. *Id*. The propriety of the trial court's grant of summary judgment in favor of the Wests and the PCF ultimately turns on whether the Wests stated a claim in negligence or medical malpractice. Whether a case is one of medical malpractice as defined in the MMA is a question for the court, and our review is de novo. *Anonymous Hosp., Inc. v. Doe*, 996 N.E.2d 329, 332 (Ind. Ct. App. 2013), *trans. denied*.

Our Supreme Court has explained that the MMA was a legislative response to escalating problems in the malpractice insurance industry, with physicians being fearful of exposure to malpractice claims and, further, being unable to obtain adequate malpractice insurance. *Johnson v. St. Vincent Hospital, Inc.*, 273 Ind. 374, 379-80, 404 N.E.2d 585, 589-90 (1980). By providing some measure of protection to health care providers, the MMA was designed to preserve health care services available to the community. *Midtown Cmty. Mental Health Ctr. v. Estate of Gahl by Gahl*, 540 N.E.2d 1259, 1260 (Ind. Ct. App. 1989), *trans. denied*. The statutory procedures for bringing a medical malpractice action are in derogation of common law, and as such, they are to be strictly construed against limiting a claimant's right to bring suit. *B.R. ex rel. Todd v. State*, 1 N.E.3d 709, 713 (Ind. Ct. App. 2013), *trans. denied*. When the legislature enacts a statute in derogation of common law, we presume that the legislature is aware of the common law and does not intend to make any change beyond what is declared in express terms or by unmistakable implication. *Id.*

The MMA defines malpractice as "a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." Ind. Code § 34-18-2-18. Health care is "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Ind. Code § 34-18-2-13. A "patient" is "an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim of any kind, whether derivative or otherwise,

17

as a result of alleged malpractice on the part of a health care provider." Ind. Code § 34-18-2-22. The MMA does not necessarily apply to all cases where a health care provider is a party. *Gahl*, 540 N.E.2d at 1260. The MMA covers "curative or salutary conduct of a health care provider acting within his or her professional capacity," i.e., it must be undertaken in the interest of or for the benefit of the patient's health. *Collins v. Thakkar*, 552 N.E.2d 507, 510 (Ind. Ct. App. 1990), *trans. denied*. The MMA does not apply to conduct *unrelated* to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment. *Howard Reg'l Health Sys. v. Gordon,* 952 N.E.2d 182, 185 (Ind. 2011) (emphasis added); *Doe by Roe*, 652 N.E.2d 101, 103 (Ind. Ct. App. 1995), *trans. dismissed*.

When deciding whether a claim falls under the provisions of the MMA, "we are guided by the substance of a claim to determine the applicability of the Act." *Doe by Roe,* 652 N.E.2d at 104. "[T]he test to determine whether a claim sounds in medical malpractice is 'whether the claim is based on the provider's behavior or practices while acting in his professional capacity as a provider of medical services.'" *Madison Ctr., Inc. v. R.R.K.*, 853 N.E.2d 1286, 1288 (Ind. Ct. App. 2006) (quoting *Collins*, 552 N.E.2d at 511), *trans. denied*. We have observed that application of this test "has resulted in hairline distinctions between claims that sound in medical negligence and those that sound in ordinary negligence." *Anonymous Hospital*, 996 N.E.2d at 333 (citing *Estate of O'Neal ex rel. Newkirk v. Bethlehem Woods Nursing & Rehab. Ctr.,* 878 N.E.2d 303, 311 (Ind. Ct. App. 2007)). Indeed, "'[f]or more than thirty years, claimants and courts have wrestled with the question of what activities fall within the MMA.'" *Eads v. Cmty. Hosp.*, 932 N.E.2d 1239,

18

1244 (Ind. 2010) (quoting Judge Kirsch's dissent). Recently, a panel of this court facing the issue of whether a claim fell within the MMA offered the following distinction:

> A case sounds in ordinary negligence [rather than medical negligence] where the factual issues are capable of resolution by a jury without application of the standard of care prevalent in the local medical community. By contrast, a claim falls under the Medical Malpractice Act where there is a causal connection between the conduct complained of and the nature of the patient-health care provider relationship.

*Terry v. Cmty. Health Network, Inc.*, 17 N.E.3d 389, 393 (Ind. Ct. App. 2014) (citing *B.R.,* 1 N.E.3d at 714-15).

In the present case, Insurance Defendants urge that the Wests' claims arise "entirely out of the relationship between a physician, his practice[,] and a patient" and "are based on the professional services and actions of healthcare providers, in the course of their treatment of a patient." *Appellants' Br*. at 39. Therefore, they argue, the Wests' allegations are classic malpractice claims. While it may be that, in a general sense, the claims would not exist but for the medical provider's treatment of Michael, we believe the inquiry must be more focused. The Wests' claims are that Nurse P did not provide the proper warnings and precautions to Michael when she spoke to him on the telephone about the Norco prescription and that the office practice and policy with regard to telephone message slips being filed in a patient's medical file were inadequate or improper or negligently handled.

With regard to the filing of the message slip, the essence of the claimed misconduct does not involve any exercise of professional medical judgment or skill by the medical provider. We have recognized that the text of the MMA indicates that the legislature intended to exclude from the MMA "conduct of a provider unrelated to the provider's

19

exercise of judgment or skill." *B.R.*, 1 N.E.3d at 716 (quoting *Collins*, 552 N.E.2d at 510-11). Indeed, there is no need for a medical review panel, the purpose of which "is to provide an expert determination on the question of whether a provider complied with the appropriate standard of care." *Id*. The issues surrounding the administrative matter of the filing of the message slip are within the understanding of the average lay juror. A jury would be capable of resolving factual issues without applying the standard of care prevalent in the local medical community, and jurors' common knowledge and experience would enable them to understand these circumstances. Accordingly, the trial court properly determined this claim was not within the scope of the MMA. *See Terry*, 17 N.E.3d at 395 (derogatory statements made by hospital emergency room staff to patient were not made to promote her health or with professional judgment or skill and factual issues were capable of resolution by jury without application of prevalent standard of care in local medical community); *Pluard v. Patients Comp. Fund,* 705 N.E.2d 1035, 1038 (Ind. Ct. App. 1999) (detachment of surgical lamp that fell on newborn's head, although positioned by nurse, did not sound in medical malpractice because jurors' common knowledge and experience would enable them to understand circumstances), *trans. denied*.

The Wests' other claimed basis of negligence is that Nurse P allegedly failed to provide the proper warnings and instructions to Michael – because she was not trained properly on what to say, she negligently failed to follow procedure, or for some other reason. In contrast to the administrative task of filing the message slip, which we found did not fall within the purview of the MMA, we find that the allegations that Nurse P failed to warn Michael present a set of facts that allege negligence "at the periphery of medical

20

malpractice." *Eads*, 932 N.E.2d at 1244. It is one of those "grey areas on the fringe of the MMA[.]" *Id*. On one hand, there appears to be no allegation that a diagnosis was in error, that the prescribed medication was inappropriate for Michael's symptoms or condition, or that Dr. H did not prescribe the correct dosage. However, the claim that Nurse P failed to warn Michael at least potentially calls into question the degree of skill exercised by Michael's health care provider. As support for their position that the MMA does not apply to their claims, the Wests characterize Nurse P as a "non-medical employee," because she was a certified athletic trainer and not a licensed nurse, and that her alleged failure to communicate warnings to Michael was "clerical." *Appellees' Wests' Br*. at 8. However, Nurse P was Dr. M's assistant, was an employee of the medical provider, was considered the acting nurse, and was responsible for communicating with patients and physicians, including regarding medications. Therefore, under the facts of this case, we do not find the athletic trainer versus licensed nurse distinction to be legally dispositive. Assuming without deciding that the claimed failure to warn Michael about the effects and restrictions of the medication constitutes giving (or failing to give) medical care as considered by the MMA, our inquiry does not end there.

The MMA is applicable only to claims by "a patient or the representative of a patient who has a claim under the article for bodily injury or death on account of malpractice." Ind. Code § 34-18-8-1. Therefore, we must determine whether the Wests fall within the scope of the MMA's definition of a "patient" having a claim as a result of alleged malpractice. The MMA defines patient as follows:

"Patient" means an individual who receives or should have received health care from a health care provider, under a contract, express or implied, and includes a person having a claim *of any kind*, whether derivative *or otherwise*, as a result of alleged malpractice on the part of a health care provider. Derivative claims include the claim of a parent or parents, guardian, trustee, child, relative, attorney, or any other representative of the patient including claims for loss of services, loss of consortium, expenses, and other similar claims.

Ind. Code § 34-18-2-22 (emphasis added). Focusing on the "having a claim of any kind" and "or otherwise" language, the Insurance Defendants argue that the definition is intentionally broad and encompasses the claims of the Wests, such that the MMA applies to their claims. They urge that the MMA's definition of a patient does not rest upon who the patient is; rather, it rests upon what type of claim is pursued. Their position is that if the alleged misconduct derives from medical malpractice to a patient (here, Michael), it is medical malpractice to *all* persons having a claim based upon the alleged malpractice. *Reply Br*. at 9. After careful consideration, we find that this position is not consistent either with the language of the statute or the legislative intent behind the MMA.

The statute's definition begins with the requirement that the patient be an individual "who receives or should have received health care from a healthcare provider." Ind. Code § 34-18-2-22. Clearly, Crystal was not the person who received health care treatment; it was Michael. While the statute's definition further states that a patient "includes a person having a claim of any kind, derivative or otherwise," we do not believe this inclusive language eviscerated the initial requirement that a patient be an individual who receives or should have received health care from a provider. Ind. Code § 34-18-2-22. As the Marion County trial court reasoned,

22

> All of the examples referenced in the definition of "patient" are categories of individuals who are entitled to bring a claim as result of an injury occurring to a patient who has "received health care treatment from a healthcare provider, under a contract, expressed or implied."

*Appellants' App.* at 31 (Conclusion 54). We are mindful that when a court is called upon to construe words in a single section of a statute, it must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. *Detterline v. Bonaventura*, 465 N.E.2d 215, 218 (Ind. Ct. App. 1984), *trans. denied.* In addition, we must presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.* Our Supreme Court has explained that the purpose and legislative intent behind the MMA was to address the problem of escalating cost to physicians of malpractice insurance, and thus preserve the availability of professional health care service to the community. *Id.* at 217-18 (citing *Johnson*, 273 Ind. at 379-80, 404 N.E.2d at 589-90). We find that if we were to read the "or otherwise" language of the statue to expand the definition of "patient" to include anyone injured as result of acts by anyone providing health care, it would effectively render the rest of the statute's language defining "patient" meaningless and without purpose. We do not believe the MMA was intended to cover claims by third parties having absolutely no relationship to the doctor or medical provider.

Insurance Defendants argue that our Supreme Court's discussion and analysis of the "or otherwise" language in *Spangler v. Betchel*, 958 N.E.2d 458 (Ind. 2011), reflects an expansive definition of "patient" that includes the Wests. In *Spangler*, the unmarried parents of a stillborn baby brought claims for negligent infliction of emotional distress

23

against the hospital, nurse-midwife, and her employer. Our Supreme Court held that the plaintiff parents, who suffered emotional distress from the still birth of their child due to medical malpractice, were within the MMA's definition of "patient." *Id*. at 472. In that case, there was direct physical and actionable emotional harm inflicted on the parents by the healthcare provider during the delivery of the child. The Court determined that the parents could assert claims for negligent infliction of emotional distress either under the modified impact rule or the bystander rule. *Id*. at 466. Their status as patients was considered to fall within the "or otherwise" language based on their independent claims for emotional distress. While the plaintiff parents in *Spangler* had a direct connection to the healthcare provider, with the mother being treated by the physician and the parents being present during the medical treatment giving rise to the emotional distress, no such connection between Crystal and the medical providers exists here.

The Marion County trial court found, and we agree, that *Gahl*, although not recent, is still good law and guides our decision. In *Gahl*, a patient at a mental health facility shot and killed a third party. The decedent's estate ("Estate") brought a negligence claim against the mental health facility alleging that it failed to warn the decedent of the patient's dangerous propensities and failed to properly medicate and supervise the patient. 540 N.E.2d at 1260. This court determined that the Estate may have a valid general negligence claim based on failure to warn, but that its claim was outside the scope of the MMA, concluding that the decedent was not a "patient" within the meaning of the MMA. *Id*. 1261-62. We recognize that the facts of *Gahl* are not identical, as, in that case, the allegation was a failure to warn the probation officer (a third party), whereas in the present

24

case, the alleged failure to warn was a failure to warn Michael (the patient). However, we nevertheless find *Gahl* instructive in determining whether the Wests are persons whose claims are governed by the MMA because, in both *Gahl* and the present case, inquiry was whether a claimant who has no prior relationship with the health care provider is a "patient" within the meaning of the MMA. "[A]lthough the Estate's claim is related to the defendants' alleged malpractice, it is not so interwined that it falls within the purview of the Malpractice Act." *Id*. at 1262; *see also R.R.K.*, 853 N.E.2d at 1289 (where patient of psychiatric hospital injured another patient, whose status was considered equivalent to any visitor on premises, provider's failure to properly medicate, restrain, or confine patient constituted common law claim excluded from MMA). Furthermore, we observe that the Wests' claims, if successful, would not benefit the patient (Michael). *Gahl*, 540 N.E.2d at 1262 (observing that any recovery by Estate's claim will not benefit patient). Based on the foregoing, we conclude that the "or otherwise" language of Indiana Code section 34-18-2-22 does not give the Wests "patient" status under the MMA.

Insurance Defendants also argue that, because the Wests filed their case both by Proposed Complaint in the IDOI and also by an identical anonymous complaint in the St. Joseph Circuit Court, they thereby elected to file their case as a medical malpractice claim and should not be permitted to argue that it is not governed by the MMA. They urge that by electing this "choice of procedure," the Wests should be estopped from arguing that their case is not a medical malpractice case. *Appellant's Br*. at 37. In support of this position, they cite to *Manley v. Sherer*, 992 N.E.2d 670 (Ind. 2013), which is factually similar and worthy of discussion.

25

In *Manley*, the plaintiff Mary Manley was injured in a head on collision with Kimberly Zehr, who had lost consciousness while driving due to medical conditions and medications prescribed by her physician, Dr. Sherer. Manley and her husband (together, "the Manleys") sued and settled with Zehr, and thereafter, the Manleys filed a proposed complaint in the IDOI against Dr. Sherer and his medical practice ("Sherer"), alleging medical negligence in failing to warn Zehr, his patient, not to drive while taking the medication. Sherer filed a motion for a preliminary determination of law and for summary judgment in the Orange County Circuit Court, contending that the plaintiffs failed to timely file their complaint in accordance with the MMA's two-year occurrence based statute of limitations and that they were entitled to judgment on the merits. The trial court granted summary judgment in favor Sherer, and the court of appeals reversed. *Manley v. Sherer*, 960 N.E.2d 815, 818 (Ind. Ct. App. 2011), *trans. granted.*

This court held that Sherer was not entitled to summary judgment on the statute of limitations issue because a factual question existed as to whether Sherer's failure to advise Zehr not to drive constituted a continuing wrong that would extend the date by which the Manleys had to file their complaint. *Id.* at 821. Next, this court addressed whether the trial court should have granted summary judgment to Sherer on the merits of the Manleys' medical malpractice claim. Following the Supreme Court's precedent in *Cram v. Howell*, 680 N.E.2d 1096, 1097 (Ind. 1997), we determined that Sherer owed a duty of care to take reasonable precautions in warning Zehr for the protection of unknown third persons. *Id.* at 823. Thus, Sherer was not entitled to summary judgment on duty, and we found that Sherer

26

also was not entitled to summary judgment on breach and causation due to existing disputes of material fact. *Id*. at 823-24. The Supreme Court accepted transfer.

While outlining the parties' respective summary judgment arguments, the Supreme Court mentioned that the Manleys "filed their proposed complaint with the [IDOI] but at no time did they ever file their complaint in court." *Manley*, 992 N.E.2d at 673. It also observed that the Manleys, in their opposition to Sherer's summary judgment motion, had argued that their claims were not subject to the MMA because Manley was not a patient of Sherer and thus her claim was not for medical malpractice subject to the special occurrence-based statute of limitation. *Id*. at 674. Before proceeding to address the merits of the statute of limitations issue, the Supreme Court stated,

> We preliminarily reject the plaintiffs' claim that their action against Dr. Sherer and his medical group is not governed by the Indiana Medical Malpractice Act. The plaintiffs have treated it otherwise by filing their proposed complaint with the Department of Insurance as required by the Act. They may not now contend that the Medical Malpractice Act and its time limitation do not apply to their claim.

*Id*.

We acknowledge that facts presented in *Manley* are strikingly similar to those before us today, but we do not find that the Supreme Court's preliminary decision that the Manleys had waived any argument concerning the application of the MMA is controlling of our decision today. We consider the Supreme Court's remarks to be a comment particular to the facts and circumstances of the *Manley* case, not a statement of law. Insurance Defendants argue that the Supreme Court *sua sponte* could have found that the MMA was inapplicable to the Manleys' claims, and because the Court made no such declaration, we

27

should infer that as a statement that third parties such as the Manleys (and the Wests) *are* "patients" within the meaning of the MMA. We are not willing to cast such a wide net based upon an inference, particularly in view of the statute's definition of "patient," combined with the purpose of the MMA and existing case law.

The Insurance Defendants maintain that the Wests, like the Manleys, are estopped from asserting that the MMA did not apply to their claims because the Wests filed their claims in the IDOI. In *Manley*, we do not know whether and to what extent the plaintiffs had opposed the application of the MMA during the course of the proceedings. We do know, however, that the Manleys never filed a complaint in court. *Manley*, 992 N.E.2d at 673. In the case before us, the Wests simultaneously filed a complaint in the St. Joseph Circuit Court and with the IDOI, and they promptly sought a preliminary determination of law approximately two months after the filing the St. Joseph action, asking that court to find that their claims were not governed by the MMA. They have consistently and thoroughly pursued that position throughout years of proceedings in multiple courts. We do not find that the Wests' decision to simultaneously file complaints in the St. Joseph Circuit Court and the IDOI, likely done to avoid any potential statute of limitations issues, is problematic or that it thereby prevented them from pursuing a determination that the MMA did not apply to their claims. The PCF is in agreement, stating that plaintiffs, meaning the Wests or any others, may not decide that a case is one of medical malpractice simply by filing it as such, as that determination is for the courts to make. As we have recognized, it is the substance of a claim, not its caption, which determines whether compliance with the MMA is necessary. *Popovich v. Danielson*, 896 N.E.2d 1196, 1201

28

(Ind. Ct. App. 2008) (MMA governed several of patient's claims even though she filed them as torts, including assault and battery, defamation, and fraud), *trans, denied*.

We affirm the Marion County trial court's determination that the Wests' allegations constitute claims of common law negligence, not medical malpractice, and thus do not fall within the MMA. Accordingly, its grant of summary judgment in favor of the Wests and PCF was not erroneous.

Affirmed.[11]

BAKER, J., concurs.

ROBB, J., concurs in result with separate opinion.

---

[11] In support for their argument that the MMA did not apply to their claims, the Wests have suggested that the liability cap of the PCF, Indiana Code section 34-18-4-3, applies to a victim of malpractice, but does not extend to someone not actually treated, and, therefore, if the Wests' claims are determined to fall within the MMA, then the liability cap would not apply, leaving PCF exposed to unlimited liability, which is likely not what the Legislature intended. We agree with the PCF that that question is beyond the scope of the issue before us, and we make no determination on the issue.

# IN THE
# COURT OF APPEALS OF INDIANA

PREFERRED PROFESSIONAL )
INSURANCE COMPANY, and HILLS )
INSURANCE COMPANY, INC., )
           )
    Appellants-Defendants, )
           )
      vs. )      No. 49A02-1403-CT-163
           )
CRYSTAL WEST, WILLIAM WEST, )
And INDIANA DEPARTMENT OF )
INSURANCE, PATIENT'S )
COMPENSATION FUND, )
           )
    Appellees-Plaintiffs and )
          Co-Defendants. )

**ROBB, Judge, concurring in result**

I respectfully concur in the result reached by the majority. I, too, agree that the Wests' claims do not fall within the MMA and therefore the trial court properly granted summary judgment to the Wests and PCF. However, I would arrive at that conclusion by a slightly different path.

Unlike the majority, I believe both negligent acts alleged by the Wests could fall within the MMA. The filing of the message slip showing the change in Michael's prescription and accompanying advisements was integral to the exercise of Dr. M's medical judgment in advising Michael that he was cleared to return to work with no

restrictions. Further, I would not say the allegations that Nurse P failed to warn Michael are "at the periphery of medical malpractice" or only "potentially call[ ] into question the degree of skill exercised by Michael's health care provider." Slip op. at 20-21 (quoting Eads, 932 N.E.2d at 1244). Regardless of her official title or professional certification, she was acting as a surrogate or conduit for medical advice and was therefore providing health care to Michael.

However, I do not believe it is necessary to decide whether these acts sound in medical negligence. Even if we assume the failure to file the message slip and failure to warn claims fall within the MMA, the dispositive question is whether the MMA covers claims by a third party independent of the two people engaged in the medical give and take. I, like the majority, believe Gahl is instructive in answering this question. In Gahl, the claimant was the estate of a third party who was not warned by medical providers of the patient's dangerous propensities. The patient himself had no claim based on the appropriateness of his care, nor did anyone whose claim would have been derivative of the patient's. The third party in Gahl alleged the medical providers' negligence was a direct failure to warn him and yet we held he was not a patient asserting a claim governed by the MMA. Here, the Wests are a completely independent third party alleging a failure to warn the patient caused their injury. The relationship between the parties is even more distant in this case than it was in Gahl and lends further support to the conclusion that the Wests' claims are not subject to the MMA.

As I ultimately agree with the majority that the Marion County trial court's determination was correct, I concur in result.

31