

**FILED**

Feb 07 2017, 9:24 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Danny E. Glass
Andrew E. Skinner
Evansville, Indiana

Clay A. Edwards
Chad J. Bradford
Louisville, Kentucky

Lonnie D. Johnson
Michelle R. Adams
Stacy F. Thompson
Bloomington, Indiana

Rick L. Weil
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Nicholas C. Deets
Indianapolis, Indiana

I N   T H E
# COURT OF APPEALS OF INDIANA

ABC Radiology, P.C., Jane Doe,
John Doe, Anonymous Medical
Associates, Inc., Sherry Patrick,

*Appellants-Defendants,*

v.

Cathy Gearhart,

*Appellee-Plaintiff*

February 7, 2017

Court of Appeals Case No.
49A05-1602-CT-446

Appeal from the Marion Superior
Court

The Honorable Michael D. Keele,
Judge

Trial Court Cause No.
49D07-1509-CT-30343

**Altice, Judge.**

### Case Summary

Cathy Gearhart's husband, Kent, died from renal cell cancer on January 14, 2015. After filing her proposed complaint for damages with the Indiana Department of Insurance, Gearhart, individually and as personal representative of Kent's estate, filed the instant action against various defendants. As amended, the complaint alleges two counts based on claims of negligence and one count seeking declaratory judgment. Count I is a medical malpractice claim against ABC Radiology, P.C. (ABC), John Doe, M.D. (Dr. Doe), Anonymous Medical Associates, Inc. (AMA), and Jane Doe, ACNP (Nurse Doe). Count II is a common-law negligence claim against Sherry Patrick and her employer, AMA. Count III (incorrectly denominated as a second Count II in the amended complaint) is a claim for declaratory judgment against the Indiana Patients Compensation Fund/Indiana Department of Insurance (the Fund), AMA, Patrick, and AMA's medical malpractice and general liability insurers.[1] Count III seeks a determination of whether the claim in Count II is subject to the Indiana Medical Malpractice Act (the Act), which insurance

---

[1] There appears to be some disagreement regarding which parties were named as defendants in Count III. The parties agree, however, that the Fund is a proper party to the declaratory judgment claim, as well as the various insurers. We find that AMA and Patrick were incorporated by reference as defendants in paragraph 32 of the complaint.

policies provide coverage for this claim, and whether the Fund has a duty to make payments for any damages awarded for Count II.

[2] Gearhart filed the complaint in the Marion Superior Court. Thereafter, the defendants named in Counts I and II (Defendants) jointly filed a motion requesting that the trial court sever Counts I and II from Count III and transfer venue of Counts I and II to Vanderburgh County, where the alleged negligence occurred and Defendants are located.[2] Defendants argued further that Count III was improperly joined.

[3] Gearhart responded that Marion County was a county of preferred venue because a necessary defendant to the action – the Fund – is a governmental organization with its principal office located there. *See* Ind. Trial Rule 75(A)(5). Gearhart argued also that all three counts were properly joined pursuant to Ind. Trial Rule 20 because they arise out of the same transaction or occurrence and have common questions of law and fact. Following a hearing, the trial court denied the motion. Defendants bring this interlocutory appeal, arguing that Gearhart's joinder of the underlying negligence claims with the declaratory judgment claim was improper and deprived Defendants of their right to trial in a preferred venue county. Thus, we are asked to determine whether the trial court abused its discretion in denying Defendants' motion to sever Counts I and II from Count III and transfer venue for those counts to Vanderburgh County.

---

[2] Gearhart resides in Warrick County, which is adjacent to Vanderburgh County.

[4]   We affirm.[3]

## Facts & Procedural History

[5]   When Kent was diagnosed with renal cell cancer in July 2009, Dr. Doe – a urologist associated with AMA – became his treating physician. Dr. Doe removed Kent's right kidney shortly after the diagnosis. Thereafter, Kent continued to see Dr. Doe or another member of the practice for routine follow-up about every six months.

[6]   On September 13, 2013, Dr. Doe ordered a routine CT scan of Kent's chest, abdomen, and pelvis. A radiologist employed by ABC interpreted the scans and reported that there was a 2.6 cm mass in the left kidney. The radiologist recommended further evaluation of the mass. There was no follow-up by Dr. Doe or AMA regarding this report, and Kent was not made aware of the results. Kent saw Nurse Doe, a nurse practitioner with AMA, in March 2014 for another routine follow-up with no mention of the abnormalities seen in the September 2013 scans.

[7]   On September 23, 2014, Kent saw another nurse practitioner with AMA for complaints of bright red urine. This nurse noted the findings from the September 2013 scans and immediately ordered follow-up CT scans. These scans revealed that the mass on Kent's left kidney had grown. The cancer had

---

[3] We held oral argument in this matter in Indianapolis on January 19, 2017, and we extend our appreciation to counsel for their presentations.

also spread to several lymph nodes and his liver. Following a PET/CT scan on October 1, 2014, Kent was diagnosed with terminal renal cell cancer to which he succumbed on January 16, 2015.

[8] Gearhart filed her proposed complaint for damages with the Indiana Department of Insurance, alleging the medical malpractice of Dr. Doe, Nurse Doe, AMA, and ABC. Thereafter, on August 5, 2015, Dr. Doe was deposed by Gearhart's counsel. Dr. Doe testified that he did not follow-up on the September 2013 radiology report because Sherry Patrick, an administrative staff member, made a data entry error upon receiving the report. As a result, the report was not forwarded to Dr. Doe or put on his list of items that needed follow-up. Dr. Doe testified that the error was purely clerical/administrative and did not involve the exercise of medical skill or judgment.

[9] On September 11, 2015, Gearhart filed her complaint for damages and for declaratory judgment in the Marion Superior Court. The complaint was amended the following month and alleged three counts as set out above. Counts I and II were for damages resulting from the negligence of Defendants – medical malpractice and common law negligence, respectively alleged. Count III sought a declaratory judgment determining whether the claim in Count II, involving the data entry error, was subject to the Act. In this regard, Gearhart pointed to *Preferred Prof's Ins. Co. v. West*, 23 N.E.3d 716 (Ind. Ct. App. 2014), *trans. denied*, for the proposition that clerical or administrative errors that do not involve the exercise of medical judgment or skill by the medical provider are matters of common-law negligence not subject to the Act.

On November 19, 2015, Defendants filed their joint motion in which they asked the trial court to either dismiss Counts I and II or sever them from Count III and transfer venue of Counts I and II to Vanderburgh County. After Gearhart filed a response to the motion, the trial court scheduled the matter for oral argument on January 27, 2016. The trial court denied the motion on February 4, 2016, and Defendants now appeal. This is an interlocutory appeal as of right. Ind. Appellate Rule 14(A)(8).

## Standard of Review

This case boils down to a determination of whether the declaratory judgment claim involving the Fund in Count III was properly joined with the tort claims in Counts I and II against Defendants. Determinations regarding joinder rest within the trial court's discretion and will be reversed on appeal only for an abuse of that discretion. *United of Omaha v. Hieber*, 653 N.E.2d 83, 87 (Ind. Ct. App. 1995), *trans. denied*.

## Discussion & Decision

Defendants argue that misjoinder of the tort counts with the declaratory judgment count impermissibly deprived Defendants of their right to trial in a preferred venue county. They ask that we order the tort claims severed from the declaratory judgment claim and transferred to Vanderburgh County, leaving only the declaratory judgment action in Marion County.

T.R. 20(A)(2) provides for permissive joinder of defendants as follows:

All persons may be joined in one [1] action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of, or arising out of, the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

T.R. 20(A) also provides:

A … defendant need not be interested in … defending against all the relief demanded. Judgment may be given … against one or more defendants according to their respective liabilities. Unwilling plaintiffs who could join under this rule may be joined by a plaintiff as defendants, and the defendant may make any persons who could be joined under this rule parties by alleging their interest therein with a prayer that their rights in the controversy be determined, along with any counterclaim or cross-claim against them, if any, as if they had been originally joined as parties.

The purpose of T.R. 20(A) is to promote trial convenience, expedite claims, and avoid multiple lawsuits. *Hieber*, 653 N.E.2d at 87 (citing *McCoy v. Like*, 511 N.E.2d 501, 503 (Ind. Ct. App. 1987), *trans. denied*). To accomplish these goals, Indiana courts give T.R. 20(A) the broadest possible reading. *Id*. This is especially true in light of the fact that T.R. 20(B) and Ind. Trial Rule 42(B) allow for separate trials after all parties have been joined. *Hieber*, 653 N.E.2d at 87.

[14] To join defendants under T.R. 20(A), three requisites must be met. First, a right of relief must be asserted against the defendants jointly, severally, or in the

alternative. *Russell v. Bowman, Heintz, Boscia & Vician, P.C.,* 744 N.E.2d 467, 472 (Ind. Ct. App. 2001), *trans. denied*.

[15] Second, and most importantly, the claims must have arisen out of the same transaction, occurrence, or series of transactions or occurrences. *Id*. In this regard, we apply the logical relationship test (also applied in the context of compulsory counterclaims under Trial Rule 13(A)): "all logically related events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Russell,* 744 N.E.2d at 472. In the related context of T.R. 13(A) we have explained:

> The phrase "transaction or occurrence" should be broadly defined so as to effectuate the rule's intended purpose of avoiding multiple lawsuits between the same parties arising from the same event or events. Two causes of action arise from the same transaction or occurrence if there is a logical relationship between them, meaning that the counterclaim arises from the same aggregate set of operative facts as the opposing party's claim.

*Ratcliff v. Citizens Bank of W. Indiana*, 768 N.E.2d 964, 967 (Ind. Ct. App. 2002), *trans. denied*.

[16] The third and final requirement for T.R. 20(A) joinder is that there is at least one common question of law or fact among the parties. *Id*. In other words, the rule does not require that every question of law or fact in the action be common among the parties. *Id*.

[17] Defendants focus their appellate argument on the second requirement and provide no analysis regarding the other two. Accordingly, we confine our analysis to a determination of whether the tort claims and the declaratory judgment claim arise out of the same transaction or occurrence.

[18] In this regard, Defendants assert that federal and state courts throughout the country have routinely held that a declaratory judgment action does not arise out of the same transaction or occurrence as the underlying tort action for purposes of permissive joinder. *See Cramer v. Walley*, 2015 WL 3968155, at *4 (D.S.C. June 30, 2015) ("The weight of authority holds that claims for negligent operation of an automobile do not arise from the same transaction or occurrence as a subsequent claim against an insurer or a declaratory judgment action involving coverage questions, and therefore cannot be joined under Fed.R.Civ.P. 20."); *St. Paul Fire & Marine Ins. Co. v. Mannie*, 91 F.R.D. 219, 221 (D.C.N.D. 1981) ("The terms of the policy and their application to a given set of facts is a question entirely separate from the question of Larry Mannie's alleged negligence"); *Colonial Penn Ins. Co. v. Hart*, 291 S.E.2d 410, 414 (Ga. App. 1982) (injured party's claim against tortfeasor's insurer could not be maintained as a compulsory counterclaim in insurer's declaratory judgment action because "the insurer's contractual liability under a given set of facts and the insured's tort liability are fundamentally distinct issues" and the tort claim "did not arise out of the transaction or question presented by the action for declaratory judgment"). Defendants also provide a string cite on pages 12 and 13 of their appellate brief that was obtained from footnote 3 in *Mannie*, 91

F.R.D. at 221. These cases were cited in *Mannie* for the proposition (a narrower proposition than argued by Defendants here) that "the emerging majority rule…disallows joinder of a negligence claim against the insurer in a declaratory judgment action where the forum state does not allow direct actions against insurers." *Id*.

[19] None of the cases cited by Defendants involve a situation like the one presented here where the injured party filed a declaratory judgment action against the alleged tortfeasors' insurers within the same complaint as the tort claims.[4] More importantly, the declaratory judgment in those cases involved typical insurance coverage issues and not a determination of whether a medical malpractice act applied. Accordingly, we do not find these cases from other jurisdictions particularly helpful.

[20] Defendants also observe that it is the policy in Indiana to keep the issue of insurance out of personal injury litigation. *Allstate Ins. Co. v. Keltner*, 842 N.E.2d 879, 884 (Ind. Ct. App. 2006). Thus, the general practice of insurance companies is to file separate declaratory judgment actions to determine coverage outside of the principal tort cases. *Cromer v. Sefton*, 471 N.E.2d 700, 704 (Ind. Ct. App. 1984). Again, however, we observe that while this general

---

[4] The vast majority of the cases cited by Defendants involve a declaratory judgment action filed by the insurer and the injured party's subsequent attempt to file a counterclaim based in tort. Although *Cramer* involved a complaint asserting both a tort claim and a declaratory judgment claim, the declaratory judgment claim was filed against the plaintiff's insurer for bad faith, not the tortfeasor's insurer.

policy is applicable to traditional insurance coverage disputes, it is not necessarily applicable to determinations of whether the Act applies.

[21] Though not presented in precisely the same procedural context, we find *West*, 23 N.E.3d 716, helpful to our consideration of the issue presented. There are factual complexities in *West* which are not necessary to address for our purposes. It suffices to say that the plaintiffs filed a complaint for negligence in the St. Joseph Circuit Court against various healthcare defendants and, at the same time, filed a proposed complaint for damages with the Indiana Department of Insurance. While the case was pending before the medical review panel, the plaintiffs filed a motion for a preliminary determination of law, asking the St. Joseph court to determine whether their claims were covered by the Act. The Fund requested and was granted permission to intervene. The Fund sided with the plaintiffs in arguing that the Act did not apply, and the defendant opposed a preliminary determination of law. The St. Joseph court declined to exercise its statutory authority to make a preliminary determination on the issue of law.[5]

[22] About a month later, the plaintiffs filed a separate complaint for declaratory judgment in the Marion Superior Court, naming as defendants the Fund and the insurers of the healthcare defendants in the St. Joseph action. This action

---

[5] The Act, specifically Ind. Code § 34-18-11-1, provides a trial court, under certain circumstances and before the medical review panel issues its opinion, with authority to "preliminarily determine an affirmative defense or issue of law or fact that may be preliminarily determined under the Indiana Rules of Procedure".

sought a determination of whether the plaintiffs' allegations in the St. Joseph action fell within the provisions of the Act or instead stated a common-law action outside of the Act. The insurance defendants filed a motion to dismiss the declaratory judgment complaint under Ind. Trial Rule 12(B)(8), arguing that the same action was pending in the St. Joseph court. The Marion Superior Court denied the motion to dismiss and thereafter issued its declaratory judgment. The court determined, based on the plaintiffs' allegations, that the claims constituted claims of common-law negligence and not medical malpractice as a matter of law.

[23] On appeal, we discussed Indiana's Uniform Declaratory Judgments Act and noted that its stated purpose is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations". I.C. § 34-14-1-12. Accordingly, it is to be liberally construed and administered. *Id*. "The test to determine the propriety of declaratory relief is whether the issuance of declaratory judgment will effectively solve the problem involved, whether it will serve a useful purpose, and whether another remedy is more effective or efficient." *West*, 23 N.E.3d at 724.

[24] Under the facts of the case, we found that a declaratory judgment was permissible and appropriate. We explained:

> In this case, the [Act] affects the rights, status, and legal relations of the parties. The issue of the applicability of the [Act] to the claims alleged by the Wests is a question for which an early determination is necessary in order to avoid the delay and expense of proceeding under inapplicable procedural and

substantive rules, whether that be the [Act] or a common law
negligence case. Such a determination in the context of this case
is useful to narrow the issues and determine the path of the case;
it determines when the case can be tried, the applicable theories
and defenses, including expert testimony, and available limits of
liability. Furthermore, as noted by the Marion County trial court,
a resolution of the applicability of the [Act] by declaratory
judgment is necessary in order for any possible resolution by
settlement to occur.

*Id*. at 724-25. We continued, "it would not be expeditious or efficient, judicially

or otherwise, for the Wests to wait for the conclusion of the medical review

panel process to determine if the [Act] applies." *Id*.

[25] *West* highlights the importance of a preliminary determination of the Act's

application to the underlying claims of negligence.[6] We find that this

determination is uniquely bound up with the underlying claims in a way that

traditional insurance coverage disputes are not. Accordingly, we hold that a

declaratory judgment action addressing the application of the Act arises out of

the same transaction or occurrence (i.e. the alleged negligent act(s)) as the tort

claims. In other words, the two are logically related and allowing permissive

---

[6] The court in *West* determined that the separate declaratory judgment action filed in Marion County was not
subject to dismissal under T.R. 12(B)(8) because the "same action" was not pending in St. Joseph County.
*Id*. at 725. This holding, however, does not mean that such actions could not be joined in the same court.

joinder in this context effectuates T.R. 20's intended purpose of promoting trial convenience, expediting claims, and avoiding multiple lawsuits.[7]

[26] Defendants have not established that the trial court abused its discretion by finding that Counts I, II, and III were properly joined. Thus, as the Fund is a necessary party to Count III, Marion County is a county of preferred venue for the entire action. *See* T.R. 75(A)(5).[8]

[27] Judgment affirmed.

[28] Riley, J. and Crone, J., concur.

---

[7] Although Count III will be tried earlier than Counts I and II, there are still obvious economies to be achieved by keeping the counts within the same lawsuit (that is, before the same court).

[8] T.R. 75 provides for numerous preferred venues, and there is no priority among the subsections establishing preferred venue. *See Salsbery Pork Producers, Inc. v. Booth*, 967 N.E.2d 1, 5 (Ind. Ct. App. 2012). As Defendants conceded at oral argument, this may result in multiple preferred venues for a given case, and a motion to transfer venue under T.R. 12(B)(3) cannot be granted if the plaintiff filed the action in one of the preferred venues. *Salsbery Pork Producers, Inc.,* 967 N.E.2d at 5. This is true even if another county of preferred venue is a more convenient forum. *See Am. Family Ins. Co. v. Ford Motor Co.*, 857 N.E.2d 971, 976 (Ind. 2006) ("Trial Rule 75(A) does not always produce preferred venue at the most convenient location"); *Garrison v. Ford*, 53 N.E.3d 454, 456 (Ind. Ct. App. 2016).